UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

EPILIO DE LA CRUZ, o/b/o :
DAMEL DE LA CRUZ, :
Plaintiff, :
:
v. : CA 05-368 M
:
MICHAEL J. ASTRUE,[1] :
COMMISSIONER, :
SOCIAL SECURITY ADMINISTRATION, :
Defendant. :

**MEMORANDUM AND ORDER**

This is an action for judicial review pursuant to 42 U.S.C. § 1383(c)(3) of the decision of the Commissioner of Social Security ("the Commissioner"), denying supplemental security income benefits ("SSI"), under Title XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 1381-1383(f). Plaintiff Epilio De La Cruz ("Plaintiff"),[2] on behalf of his son Damel ("Damel" or "claimant"), has filed a motion for summary judgment. Defendant

---

[1] On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. Pursuant to Fed. R. Civ. P. 25(d)(1), Commissioner Astrue is hereby substituted for Jo Anne B. Barnhart as Defendant in this action. See Fed. R. Civ. P. 25(d)(1) ("When a public officer is a party to an action in his official capacity and during its pendency dies, resigns, or otherwise ceases to hold office, the action does not abate and the officer's successor is automatically substituted as a party. Proceedings following the substitution shall be in the name of the substituted party ...."); see also 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

[2] Several spellings of Plaintiff's first name appear in the record. See Complaint (Document ("Doc.") #1) at 1 ("Epilio"); Plaintiff's Motion for Summary Judgment at 1 (same); see also Defendant's Motion for an Order Affirming the Decision of the Commissioner (Doc. #10) at 1 ("Elpidio"); (Record ("R.") at 55) (Disability Report - Child ("Disability Report"))("Epidio"); (R. at 197) (Transcript of May 10, 2004, hearing)("Eldideo"). The Court adopts the spelling as it appears in the Complaint.

Michael J. Astrue ("Defendant") has filed a motion for an order affirming the decision of the Commissioner.

With the parties' consent, this case has been referred to a magistrate judge for all further proceedings and the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. For the reasons set forth herein, I find that the Commissioner's decision that Damel is not disabled is supported by substantial evidence in the record. Accordingly, based on the following analysis, I order that Defendant's Motion for an Order Affirming the Decision of the Commissioner (Document ("Doc.") #10) ("Motion to Affirm") be granted and that Plaintiff's Motion for Summary Judgment (Doc. #9) ("Motion for Summary Judgment") be denied.

**Procedural History**

Plaintiff filed an application for SSI on December 31, 2001, alleging that Damel was disabled due to blindness in one eye[3] and learning delays. (Record ("R.") at 18-19, 51-54, 55-56) The application was denied initially and on reconsideration, (R. at 18, 25-26, 27-30, 32-35), and a request for a hearing before an administrative law judge ("ALJ") was timely filed, (R. at 18, 36). A hearing was held on May 10, 2004, at which Plaintiff and Damel, represented by counsel, appeared and Damel testified. (R. at 18, 197-214) On October 20, 2004, the ALJ issued a written decision wherein he concluded that Damel was not under a disability as defined in the Act, and, accordingly, was not eligible to receive SSI benefits. (R. at 18-24) Plaintiff requested review by the Appeals Council, (R. at 11-12), which on June 27, 2005, denied his request, (R. at 6-8), thereby rendering

[3] The ALJ stated that the claimant alleged disability "due to blindness in his right eye ...." (R. at 18) However, Plaintiff indicated "blindness left eye," (R. at 56), in the Disability Report, (R. at 55-65), filed in conjunction with his application.

the ALJ's decision the final decision of the Commissioner, (R. at 6).

On August 26, 2005, Plaintiff filed a Complaint (Doc. #1) in this Court, challenging the denial of benefits and requesting that the Court reverse the decision of the Commissioner and order that Plaintiff be awarded SSI benefits or, in the alternative, remand the matter for application of the correct legal standard or for the taking of additional evidence. See Complaint at 1-3. Defendant filed his Answer (Doc. #4) on November 7, 2005. The case was subsequently referred to this Magistrate Judge. See Order of Reference (Doc. #5). The Motion for Summary Judgment (Doc. #9) was filed on August 28, 2006, followed on September 28, 2006, by the Motion to Affirm (Doc. #10).

## Issue

The issue for determination is whether there is substantial evidence in the record to support the decision of the Commissioner that Damel was not disabled within the meaning of the Act.

## Background

The claimant was born on August 27, 1989. (R. at 19, 51) At the time of the hearing before the ALJ in May of 2004, Damel was fourteen years old and in the seventh or eighth grade. (R. at 19, 82, 201) He was in a self-contained, bilingual special education class at school. (R. at 22)

Damel was born with complete eyelid closure which required two surgeries to open the lids. (R. at 19 (citing R. at 149)) Subsequently, he underwent an additional strabismus[4] eye surgery

[4] "Strabismus" refers to the "inability of one eye to attain binocular vision with the other because of imbalance of the muscles of the eyeball ...." Merriam Webster's Medical Desk Dictionary 772 (1996).

at age five to cosmetically correct a right esotropia.[5] (Id.) As a result of his operations[6] and his "family situation,"[7] (R. at 205), Damel did not attend school regularly until he was nine years old, (R. at 20, 205), and, when he came to the United States in 2001, his school records from Puerto Rico indicated that he was still in the second grade despite being twelve years old, (R. at 205-06).

**Evidence**

The evidence pertaining to the claimant's learning disorder[8] consists the following exhibits: a report of a psychological evaluation performed by the Puerto Rico Department of Education's Psychology Services, (R. at 173-84[9]); an Individual Education Program ("IEP") from the claimant's school

[5] "Esotropia" is defined as "strabismus in which there is manifest deviation of the visual axis of an eye toward that of the other eye, resulting in diplopia. Called also *cross-eye* ...." Dorland's Illustrated Medical Dictionary 581 (28th ed. 1994).

[6] The Disability Report states that Damel had three operations on the same (presumably the left, see n.3) eye. (R. at 56) It was reported to Luz Teixeira, Ph.D., that Damel "had 4 eye surgeries from age 3 to 8 years." (R. at 152) Damel testified at the May 10, 2004, hearing that he underwent a total of five surgeries. (R. at 204-05)

[7] Damel was born in Puerto Rico. (R. at 204) Reportedly, he had been in his father's care since his parents separated when he was three months old. (R. at 153) Damel lived in the Dominican Republic with his father's family for over two years before joining his father in Puerto Rico permanently at age two and a half. (Id.) Damel came to the United States in 2001. (R. at 204-05)

[8] Plaintiff appears to challenge only the ALJ's decision regarding Damel's learning disorder, not his physical impairment. See Plaintiff's Memorandum in Support of His Motion for Summary Judgment ("Plaintiff's Mem.") at 8-10. Accordingly, the Court discusses only the evidence pertaining to the claimant's learning disorder.

[9] The Court cites to the English translation of the report. The original report, in Spanish, is also part of the record. (R. at 185-96)

in Puerto Rico, (R. at 106-118[10]); school questionnaires from the claimant's sixth grade teacher, Sara Melin, (R. at 80-81, 102-03); a functional assessment from the claimant's bilingual special education resource teacher, Iris Falck, (R. at 88-90); an IEP for the 2002-03 school year, (R. at 91-101); and a report of a psychological evaluation performed by Luz C. Teixeira, Ph.D., at the request of Rhode Island Disability Determination Services ("DDS"), (R. at 152-56). In addition, Mary Ann Paxson, Ph.D., a non-examining state agency practicioner, reviewed the evidence of record pertaining to the claimant's learning disorder. (R. at 157-64)

**Law Governing Childhood Disability Claims**

Under the current standard for defining childhood disabilities under the Act:

> An individual under the age of 18 shall be considered disabled ... if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 1382c(a)(3)(C)(i); see also 20 C.F.R. § 416.906 (2007).

> In evaluating a child's application for SSI benefits, an ALJ must engage in a three-part inquiry and determine whether: (1) the child is engaged in substantial gainful activity; (2) the child has an impairment or combination of impairments that is severe; and (3) the child's impairment meets or equals an impairment listed in Appendix 1, Subpart P of the regulations. 20 C.F.R. §§ 416.924(b)-(d). If, at the third step of the analysis, the ALJ determines that the child's impairment does not meet or equal a listed impairment, the ALJ must then consider whether the child's impairment is equivalent in severity to that of a listed impairment (i.e., whether it "results in limitations that functionally equal the

[10] See n.9. The original IEP, in Spanish, follows the English translation in the record. (R. at 119-31)

listings"). 20 C.F.R. § 416.926a(a).

Orben v. Barnhart, 208 F.Supp.2d 107, 109 (D.N.H. 2002). "Functional equivalency means that the impairment is of 'listing-level severity; i.e., it must result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain ....'"[11] Encarnacion v. Barnhart, 331 F.3d 78, 84 (2nd Cir. 2003)(quoting 20 C.F.R. § 416.926a(a) (alteration in original).

> The ALJ considers how a child functions in his activities "in terms of six domains:" "(i) Acquiring and using information; (ii) Attending and completing tasks;

---

[11] Section 416.926a(e)(2) provides, in relevant part, that:

> (i) We will find that you have a "marked" limitation in a domain when your impairment(s) interferes seriously with your ability to independently initiate, sustain, or complete activities. Your day-to-day functioning may be seriously limited when your impairment(s) limits only one activity or when the interactive and cumulative effects of your impairment(s) limit several activities. "Marked" limitation also means a limitation that is "more than moderate" but "less than extreme." It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean.

20 C.F.R. § 416.926a(e)(2)(i) (2007). An "extreme" limitation is found

> when your impairment(s) interferes very seriously with your ability to independently initiate, sustain, or complete activities. Your day-to-day functioning may be very seriously limited when your impairment(s) limits only one activity or when the interactive and cumulative effects of your impairment(s) limit several activities. "Extreme" limitation also means a limitation that is "more than marked." "Extreme" limitation is the rating we give to the worst limitations. However, "extreme limitation" does not necessarily mean a total lack or loss of ability to function. It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least three standard deviations below the mean.

20 C.F.R. § 416.926a(e)(3)(i).

> (iii) Interacting and relating with others; (iv) Moving about and manipulating objects; (v) Caring for yourself; and[] (vi) Health and physical well-being." [20 C.F.R.] § 416.926a(b)(1). The regulations provide that a child must be found to be disabled if he or she has an impairment or impairments of "listing-level severity," that is, an "extreme" limitation in one of these domains, or "marked" limitations in two or more domains. 20 C.F.R. § 416.926a(a).

Encarnacion v. Barnhart, 331 F.3d at 84-85 (footnote omitted).

**ALJ's Decision**

At the first step of the inquiry, the ALJ noted that Damel was born on August 27, 1989, and that he had never engaged in substantial gainful activity. (R. at 19, 24) At the second step, the ALJ found that Damel's blindness in his right[12] eye and learning disorder were "severe" within the meaning of 20 C.F.R. § 416.924(c). (R. at 20, 24) However, at the third step, the ALJ found that Damel's impairments did not meet or equal in severity the requirements of any listed impairment. (Id.) The ALJ then proceeded to a determination of whether Damel's impairments functionally equaled a listed impairment. (R. at 20) After examining Damel's performance in the six domains of functioning, (R. at 22-23), the ALJ found that the claimant had a marked limitation of functioning in the domain of acquiring and using information, (R. at 22), a less than marked limitation of functioning in the domains of attending and completing tasks and caring for yourself, (R. at 22, 23), and no limitation of functioning in the domains of interacting and relating with others, moving about and manipulating objects, and health and physical well-being, (R. at 22, 23). Thus, because Damel did not have an extreme limitation of functioning in one domain or marked limitation of functioning in two domains, the ALJ determined that the claimant's impairments did not functionally equal a listed

[12] See n.3.

impairment and, accordingly, concluded that the claimant was not disabled for purposes of eligibility for child SSI benefits. (R. at 23, 24)

**Standard of Review**

Pursuant to the statute governing review, the court is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Nevertheless, judicial review of the Commissioner's decision is limited in scope.

The court does not undertake a de novo review of the Commissioner's factual findings, nor does it re-weigh the evidence. See Schoenfeld v. Apfel, 237 F.3d 788, 792 (7th Cir. 2001); Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1190-91 (3rd Cir. 1986). The decision "will be overturned only if it is not supported by substantial evidence,[13] or if it is based on legal error." Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995); see also Evangelista v. Sec'y of Health & Human Servs., 826 F.2d 136, 144 (1st Cir. 1987). If the Commissioner's decision is supported by substantial evidence in the record, it must be upheld regardless of whether reasonable minds could differ as to the outcome. See 42 U.S.C. § 405(g); Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769-70 (1st Cir. 1991).

---

[13] Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427 (1971)(quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 217 (1938)) (internal quotation marks omitted). "This is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620, 86 S.Ct. 1018, 1026 (1966).

**Errors Claimed**

Plaintiff argues that because the ALJ ignored evidence and failed to give adequate reasons for giving reduced weight to evidence, his conclusions that the claimant's learning disorder did not meet or equal a listing are not supported by substantial evidence. See Plaintiff's Memorandum in Support of His Motion for Summary Judgment ("Plaintiff's Mem.") at 8.

**Discussion**

Plaintiff alleges that "the ALJ either failed to consider, or inadequately articulated the weight accorded the evidence." Plaintiff's Mem. at 9. Specifically, Plaintiff claims that the ALJ's articulated reason for the weight given to the May 21, 1999, report of the school psychologist in Puerto Rico was "insufficient." Id. at 9, 10. In addition, Plaintiff contends that the ALJ failed to mention the opinion of the claimant's special education teacher that "the claimant's impairment in cognitive/ communication development/function[14] was 'extreme.'" Id. at 10. Thus, in Plaintiff's view,

> Because the ALJ failed to give adequate reasons, or no reasons, for failing to credit the reports of the school psychologist and the claimant's teacher, his conclusion[] that the claimant did not meet or equal Listing 112.05 or any other listing are [sic] not supported by substantial evidence and he has failed to provide a decision subject to appellate review. Accordingly, this matter should be remanded so that the evidence may be considered and reasons given for the acceptance or rejection of the

[14] Prior to 2001, the domains were referred to as "[b]road areas of development or functioning." 20 C.F.R. § 416.926a(c) (2000); see also 20 C.F.R. § 416.926a(b)(1) (2001) (reflecting change in terminology to "domains"). Thus, for example, the domain of "[a]cquiring and using information," 20 C.F.R. § 416.926a(b)(1)(i) (2007), was then known as "Cognition/ Communication," 20 C.F.R. § 416.926a(c)(4)(i) (2000), and "[a]ttending and completing tasks," 20 C.F.R. § 416.926a(b)(1)(ii) (2007), was formerly called "[c]oncentration, persistence, or pace," 20 C.F.R. § 416.926a(c)(4)(vi) (2000).

relevant evidence.

Plaintiff's Mem. at 10.

Regarding the 1999 report from the Puerto Rico Department of Education's Psychology Services,[15] the ALJ stated that "[a] May 1999 psychology services evaluation has also been considered. However, since it was performed prior to the filing of claimant's application, it is given no weight that [sic] the report of Dr. Teixeira.[16]" (R. at 20)(internal citation omitted). Plaintiff concedes that "it was the ALJ's prerogative to accept one report over the other ...," Plaintiff's Mem. at 9, but argues that "[t]he fact that one report was done after the other simply is an insufficient reason for accepting one over the other." Id. at 10.

---

[15] According to the report, testing resulted in IQ scores of 82 on the verbal scale, 54 on the execution (performance) scale, and 65 on the total (full) scale. (R. at 178) It was noted in the report's summary that these scores were consistent with a functional level of below average on the verbal scale, moderate on the execution scale, and mild retardation on the total scale. (R. at 179) The evaluator concluded that the claimant functioned at the mildly retarded level. (R. at 180)

[16] Luz C. Teixeira, Ph.D., performed a psychological evaluation of the claimant on November 26, 2002, at the request of Rhode Island Disability Determination Services ("DDS"). (R. at 152) Among the tests she performed were the Weschsler Intelligence Scale for Children - Third Edition ("WISC-III"), Performance Scale, and the Test of Non-Verbal Intelligence - 3rd Edition ("TONI-3"). (Id.) On the WISC-III, Damel obtained a Performance IQ score of 77, placing him in the borderline to low average range of intelligence. (R. at 154) Regarding Damel's performance on the TONI-3, Dr. Teixeira stated that "he obtained a Raw Score of 18 indicating that his overall level of functioning is currently at the 16th percentile, equivalent to a Deviation Quotient of 85. This score places Damel in the Low Average range of nonverbal intelligence, higher than with his performance on the WISC-III ...." (Id.) She concluded that this "indicat[ed] that his performance on ... the TONI is probably a better measure of Damel's ability to think and to process information when language is not concerned." (Id.) Dr. Teixeira noted that Damel's attention and concentration, persistence, and frustration tolerance appeared adequate. (R. at 153, 156) She diagnosed the claimant with a learning disorder, not otherwise specified. (R. at 156)

The Court finds the ALJ's stated explanation for the weight given to the 1999 psychology services evaluation, namely that "it was performed prior to the filing of claimant's application ...," (R. at 20), to be both sufficient and reasonable, see Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991)(noting that the Court "must uphold the [Commissioner's] findings ... if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion")(second alteration in original). As Defendant notes, "[t]here is no retroactive entitlement to Supplemental Security Income ("SSI") .... Therefore, the issue in this case only relates to whether Claimant was disabled between December 2001, when an application was filed on his behalf, and October 2004, when the ALJ issued his decision." Defendant's Memorandum in Support of Motion for an Order Affirming the Decision of the Commissioner ("Defendant's Mem.") at 2 n.1 (citing 20 C.F.R. §§ 415.202(g)[17], 416.335[18]).

The earlier report also conflicts with the more recent evaluation performed by Luz C. Teixeira, Ph.D. (R. at 152-56) On the Performance Scale of the Weschsler Intelligence Scale for Children - Third Edition ("WISC-III"), Damel obtained an IQ score

---

[17] Section 416.202(g) lists the filing of an application as one of the requirements for eligibility for SSI. See 20 C.F.R. § 416.202(g) (2007).

[18] Section 416.335 provides that:

> When you file an application in the month that you meet all the other requirements for eligibility, the earliest month for which we can pay you benefits is the month following the month you filed the application. If you file an application after the month you first meet all the other requirements for eligibility, we cannot pay you for the month in which your application is filed or any months before that month.

20 C.F.R. § 416.335 (2007).

of 77, which placed him in the low average range of intellectual functioning. (R. at 155) On the Test of Non-Verbal Intelligence - 3rd Edition ("TONI-3"), his "score place[d] Damel in the Low Average range of nonverbal intelligence, higher than with his performance on ... the WISC-III indicating that his performance on the TONI is probably a better measure of Damel's ability to think and to process information when language is not concerned." (Id.)

It is the ALJ's responsibility to resolve such conflicts in the evidence, not the Court's. See Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991)("[T]he resolution of conflicts in the evidence is for the [Commissioner], not the courts."); Evangelista v. Sec'y of Health & Human Servs., 826 F.2d 136, 141 (1st Cir. 1987)("Conflicts in the evidence are, assuredly, for the [Commissioner]--rather than the courts--to resolve."). Moreover, "[i]t is within the [Commissioner's] domain to give greater weight to the testimony and reports of medical experts who are commissioned by the [Commissioner]." Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275 n.1 (1st Cir. 1988). The Court concludes that the ALJ was justified in giving more weight to Dr. Teixeira's 2002 evaluation than to the 1999 psychological assessment.[19]

---

[19] In addition, at the May 10, 2004, hearing, Plaintiff's counsel stated that:

> What could be going on in this case is that Damel did not go to school regularly until he was about 9 years old because of the surgeries and ... because of the family situation. And therefore, when he came into this country in 2001 the records indicate that he was still in the second grade despite being 12 years old, I believe. So what may have happened is that he had such tremendous deficiencies [due] only to the fact that he simply hadn't been to school regularly.

(R. at 205-06) Counsel recognized that Dr. Teixeira's evaluation "indicate[d] certainly he's having some problems but not to the level of being disabled." (Id.)

Turning to Iris Falck, the claimant's special education resource teacher, Plaintiff argues that "[t]he ALJ failed to mention the teacher's opinion,[20] much less state why he found it unpersuasive." Plaintiff's Mem. at 10. Plaintiff contends that her "opinion that the claimant's impairment in the area of cognitive/communication development/function was 'extreme' ... would be consistent with IQ scores in the mentally retarded range, as stated in the listings."[21] Id. Plaintiff concludes

---

[20] Ms. Falck completed a Functional Assessment dated May 2, 2002. (R. at 88-90) She noted that she had known the claimant for four months and that he carried a diagnosis of "borderline retarded." (R. at 88) Ms. Falck rated the severity of Damel's impairment in the area of cognitive/communicative development/function as "[e]xtreme[.]" (Id.) She stated that his reading (decoding) was at a fourth grade level and that his reading (comprehension) was at a first grade level, elaborating that "Damel is unable to retrieve information from a text[.]" (Id.) According to Ms. Falck, Damel wrote at a first grade level, with poor syntax and no use of punctuation or capital letters, and his math ability was at a second grade level. (Id.) In the area of concentration, persistence, and pace, Ms. Falck indicated "[m]arked" impairment, (R. at 90), and observed that Damel was "quickly frustrate[d] when he needs to gain information from a text or write [and was] unable to do these activities independently," (id.). She found "[l]ess than [m]arked," impairment in the areas of motor development/function, social development/function, and personal development/function. (R. at 89)

[21] Plaintiff appears to argue that Damel's learning disorder met Listing 112.05 (mental retardation). See Plaintiff's Mem. at 7-8; Defendant's Memorandum in Support of Motion for an Order Affirming the Decision of the Commissioner ("Defendant's Mem.") at 11; see also 20 C.F.R., Pt. 404, Subpt. P, App. 1 (Listing of Impairments). However, this is not the main focus of Plaintiff's argument. See Plaintinff's Mem. at 8-10. Rather, Plaintiff concentrates on the purely legal issue of whether the ALJ was obliged to give his reasons for rejecting Ms. Falck's opinion. See id. at 10. Accordingly, the Court views this argument as waived. Cf. Willhauck v. Halpin, 953 F.2d 689, 700 (1st Cir. 1991)(noting "settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived .... It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work ....")(alterations in original). Moreover, Plaintiff did not argue at the hearing that Damel's learning disorder met the listings. (R. at 20)("The [ALJ] notes that the claimant does not allege that he meets or [medically] equals any listed impairment."). See Shalala v. Illinois Council on Long Term Care,

that it was the ALJ's option to accept or reject such opinion, but that he was not permitted to ignore it. See Plaintiff's Mem. at 10.

Plaintiff is correct that the ALJ failed to address Ms. Falck's opinion. (R. at 18-24) While an ALJ "need not directly address every piece of evidence in the administrative record," Rasmussen-Scholter v. Barnhart, No. Civ.A. 03-11889-DPW, 2004 WL 1932776, at *10 (D. Mass. Aug. 16, 2004)(citing Rodriguez v. Health & Human Servs., 915 F.2d 1557, 1990 WL 152336, at *1 (1st Cir. September 11, 1990)(per curiam)(unpublished table decision); Lord v. Apfel, 114 F.Supp.2d 3, 13 (D.N.H. 2000)("[T]he First Circuit has held that an ALJ's written decision need not directly address every piece of evudence in the administrative record.")(citing Shaw v. Sec'y of Health & Human Servs., 25 F.3d 1037, 1994 WL 251000, at *5 (1st Cir. June 9, 1994)(per curiam)(unpublished table decision); cf. NLRB v. Beverly Enterprises-Massachusetts, Inc., 174 F.3d 13, 26 (1st Cir. 1999) (noting, in labor context, that "[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party"), he "may not ignore relevant evidence, especially evidence that supports a claimant's cause," Rasmussen-Scholter v. Barnhart, 2004 WL 1932776, at *10 (citing Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999)); see also Herron v. Shalala, 19 F.3d 329, 333 (7th Cir. 1994)("Although a written evaluation of each piece of

---

Inc., 529 U.S. 1, 15, 120 S.Ct. 1084, 1094 (2000)(stating that "§ 405(g) contains the nonwaivable and nonexcusable requirement that an individual present a claim to the agency before raising it in court"); Mills v. Apfel, 244 F.3d 1, 8 (1st Cir. 2001)(affirming district court's finding that plaintiff waived claim by making no mention of it to ALJ); see also Sims v. Apfel, 530 U.S. 103, 112, 120 S.Ct. 2080, 2086 (2000)(O'Connor, J., concurring in part and concurring in judgment)("In most cases, an issue not presented to an administrative decision maker cannot be argued for the first time in federal court.").

evidence or testimony is not required, neither may the ALJ select and discuss only that evidence that favors his ultimate conclusion.")(internal citations omitted); Dedis v. Chater, 956 F.Supp 45, 51 (D. Mass. 1997)("While the ALJ is free to make a finding which gives less credence to certain evidence, he cannot simply ignore ... the 'body of evidence opposed to [his] view.'")(quoting Diaz v. Sec'y of Health & Human Servs., 791 F.Supp. 905, 912 (D.P.R. 1992) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488, 71 S.Ct. 456, 465 (1951)))(alterations in original). "The [ALJ's] decision 'must take into account whatever in the record fairly detracts from its weight.'" Rasmussen-Scholter v. Barnhart, 2004 WL 1932776, at *10 (quoting Universal Camera Corp. v. NLRB, 340 U.S. at 488, 71 S.Ct. at 464); see also Herron v. Shalala, 19 F.3d at 333 ("[T]he ALJ's decision must be based on consideration of all the relevant evidence, and ... the ALJ must articulate at some minimal level his analysis of the evidence.")(internal quotation marks omitted); cf. Zblewski v. Schweiker, 732 F.2d 75, 79 (7th Cir. 1983)("[W]hen the ALJ fails to mention rejected evidence, 'the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.'")(quoting Cotter v. Harris, 642 F.2d 700, 705 (3rd Cir. 1981)).

Remand, however, is not always required. See Dantran, Inc. v. U.S. Dep't of Labor, 171 F.3d 58, 73 (1st Cir. 1999)("[W]hen a reviewing court discovers a serious infirmity in agency decisionmaking, the ordinary course is to remand. But such a course is not essential if remand will amount to no more than an empty exercise.")(internal citations omitted); see also Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989)("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result."); Seymour v.

Barnhart, No. 02-197-B-W, 2003 WL 22466174, at *3 (D. Me. Oct. 31, 2003)("We have often held that [a]n arguable deficiency in opinion-writing technique is not a sufficient reason for setting aside an administrative finding where ... the deficiency probably ha[s] no practical effect on the outcome of the case.")(quoting Bryant ex rel. Bryant v. Apfel, 141 F.3d 1249, 1252 (8th Cir. 1998))(alterations in original); Lord v. Apfel,114 F.Supp.2d at 13 ("[W]e see no reason to return this case for the purely formulaic purpose of having the ALJ write out what seems plain on a review of the record.")(quoting Shaw v. Sec'y of Health & Human Servs., 1994 WL 251000, at *5). Here, remand would be such an "empty exercise," Dantran, Inc. v. U.S. Dep't of Labor, 171 F.3d at 73, because substantial evidence supports the ALJ's finding that Damel's learning disorder did not functionally equal in severity a listed impairment, (R. at 23-24).

As noted previously, in order to functionally equal a listed impairment, a child's impairment "must result in 'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain ...." 20 C.F.R. § 416.926a(a); see also Encarnacion v. Barnhart, 331 F.3d at 84-85 ("The regulations provide that a child must be found to be disabled if he or she has an impairment or impairments of 'listing-level severity,' that is, an 'extreme' limitation in one of these domains, or 'marked' limitations in two or more domains.")(quoting 20 C.F.R. § 416.926a(a)). The ALJ found that Damel had a marked limitation in the domain of acquiring and using information and less than marked or no limitations in the remaining domains. Substantial evidence in the record supports these findings.[22]

---

[22] Plaintiff does not challenge the ALJ's findings in the domains of caring for yourself, interacting and relating with others, moving about and manipulating objects, and health and physical well-being. See Plaintiff's Mem. at 8-10. Plaintiff's argument regarding Ms. Falck refers to her "opinion that the claimant's impairment in

The only source to find an extreme limitation in any domain was Ms. Falck, who found that Damel had an extreme limitation in the area of cognitive/communicative function/development.[23] (R. at 88) His sixth grade teacher, Ms. Melin, noted grades ranging from B- to D-. (R. at 103) Dr. Teixeira reported that Damel obtained a performance IQ score of 77 on the WISC-III, placing him in the borderline to low average range of intellectual functioning, and that his results on the TONI-3 he placed in the low average range of nonverbal intelligence. (R. at 155) As noted previously, Dr. Teixeira opined that "his performance on the TONI is probably a better measure of Damel's ability to think and process information when language is not concerned." (Id.) Dr. Teixeira additionally observed that on the Spanish edition of the Peabody Picture Vocabulary Test, Damel's standard score of 97 "appear[ed] to indicate adequate receptive (hearing) language functioning," (id.), and noted that "[n]o significant speech problems were noticeable [and] [h]is articulation was adequate," (id.).

Mary Ann Paxson, Ph.D., after reviewing the evidence of record and contacting the guidance office at Damel's school, (R. at 163), found Damel to have a marked limitation in the domain of acquiring and using information, (R. at 159). She stated that Damel was "in the 7th grade self-contained, bilingual special education class. He is noted by [his] current teacher to be 'doing great[,]' earning all A&B grades [and is an] honor roll

cognitive/communication develpment/function was 'extreme.'" Id. at 10. However, because Ms. Falck also opined that Damel's limitation in the domain of attending and completing tasks (formerly known as Concentration/Persistence/Pace, see n.14) was marked, (R. at 90), and an additional marked limitation would rise to the level of functional equivalence, the Court addresses this domain as well.

[23] See n.14.

candidate."[24] (R. at 159) Dr. Paxson recognized that Ms. Falck, Damel's sixth grade resource teacher, had "note[d] borderline retardation[,] which is consistent with scores reported ... by Dr. Teixeira ...." (Id.)

As for the domain of attending and completing tasks, Ms. Falck found Damel to have a marked limitation in this area, (R. at 90), noting that he "quickly frustrates when he needs to gain information from a text or write ...," (id.), and that he was "unable to do these activities independently," (id.). However, she is again alone in this assessment. On January 3, 2002, Ms. Melin characterized Damel's ability to concentrate and organize his work as "good," (R. at 80), although on June 4, 2002, she opined that he was "[v]ery disorganize[d]," (R. at 102). Dr. Teixeira found Damel's attention, concentration, and persistence to be "adequate." (R. at 156) She further stated that during testing "[i]n response to difficult tasks, he did not give up easily. Damel worked at a regular pace throughout the test." (Id.) Dr. Paxson indicated that Damel's limitation in this domain was less than marked. (R. at 159) She observed that Damel's current teacher had noted that he functioned well and independently in the classroom, with commendable effort, that he had not been diagnosed with or prescribed medication for attention deficit hyperactivity disorder, that his father noted no difficulties with paying attention and sticking with a task, and that Dr. Teixeira had found adequate attention and concentration and good persistence. (Id.)

Based on the foregoing, the Court concludes that the ALJ's findings of a marked limitation in the domain of acquiring and

---

[24] The claimant's testimony at the May 10, 2004, hearing is consistent with what the guidance office reported to Dr. Paxson. Asked about his grades during the first and second quarters, Damel stated that he had received A's and B's, with one C or D. (R. at 201-202)

using information and a less than marked limitation in the domain of attending and completing tasks are supported by substantial evidence in the record. See Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d at 769 (noting that the Court "must uphold the [Commissioner's] findings ... if a reasonable mind, reviewing the evidence in the record, could accept it as adequate to support his conclusion")(second alteration in original). The ALJ reasonably chose to rely on Dr. Teixeira's assessment over the earlier psychological evaluation. See id. (noting noting that it is the Commissioner's responsibility "to draw inferences from the record evidence ... [and that] the resolution of conflicts is for the [Commissioner], not the courts"). In addition, although the ALJ should have addressed Ms. Falck's opinion that Damel's limitations in the domains of acquiring and using information and attending and completing tasks were, respectively, extreme and marked, remand to have the ALJ explain his decision not to credit her assessment would serve no purpose, since it would not change the outcome of the matter. See Dantran, Inc. v. U.S. Dep't of Labor, 171 F.3d at 73 (noting that remand is not essential "if remand will amount to no more than an empty exercise"); Fisher v. Bowen, 869 F.2d at 1057 (noting that remand is not required "unless there is reason to believe that the remand might lead to a different result").

**Summary**

The Court has reviewed the entire record and concludes that the ALJ's findings that Damel did not have an extreme limitation in one domain or marked limitations in two domains is supported by substantial evidence. See Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d at 770 ("Although the record arguably could support a different conclusion ... there is substantial evidence in the record to support the [Commissioner's] decision .... Therefore, [the Court] must uphold his decision.")(citing

Rodriquez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987)). Therefore, remand is not warranted.

**Conclusion**

For the reasons stated above, I find that the ALJ's determination that Damel is not disabled is supported by substantial evidence in the record. Accordingly, I order that Defendant's Motion to Affirm be granted and that Plaintiff's Motion to Remand be denied.

/s/ David L. Martin
DAVID L. MARTIN
United States Magistrate Judge
September 28, 2007