IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| DAVID WILLIAMS, MARK WOLENC, PATRICIA WELLHAUSEN, ERICA SMITH, BRENDA FIGUEROA, Plaintiffs | ) | |
| v. | ) | C.A. NO. 07-CV-00416-S-LDA |
| LEE GROSSI, in his official capacity as Acting Secy. of R.I. Executive Office of Health & Human Services and GARY ALEXANDER, in his official capacity as Director of R.I. Dept. of Human Services, Defendants | ) | |

**SECOND AMENDED COMPLAINT**

1. Plaintiffs, low income individuals with serious and chronic illnesses and disabilities, have been found "not disabled" by the Department of Human Services (DHS) and had Medical Assistance (MA) benefits denied or delayed. As set forth herein, the process DHS uses to determine disability violates the federal Medicaid Act.

2. DHS must find plaintiffs disabled for purposes of MA if they meet the definition of disability or blindness used to determine eligibility for SSI. 42 U.S.C. §§ 1396a(v).

3. At issue is DHS' failure to adopt and apply the SSI disability standard, including the Step 2 severity standard, and its systematic failure to evaluate evidence as federal law requires. In addition, plaintiffs challenge the fairness of DHS' hearing procedures, contending, among other things, that DHS hearing officers have a policy or practice of giving presumptive weight to

the findings and opinions of the medical team which made the initial determination and/or failing to conduct de novo review. Plaintiffs' disability claims have not been evaluated under the proper legal standards and, as a result, Plaintiffs have been denied much-needed MA benefits without due process. They seek a declaration that Defendants' various policies and practices violate federal Medicaid and Constitutional requirements and an injunction requiring Defendants to determine eligibility for MA in compliance with federal law.

**Jurisdiction**

4. This court has jurisdiction under 28 U.S.C. § 1331 and § 1343(3). Plaintiffs' action for declaratory and injunctive relief is authorized by 28 U.S.C. §§ 2201, 2202, and Fed. R.Civ.P. 57. Plaintiffs raise claims pursuant to 42 U.S.C. § 1983.

**Parties**

5. Plaintiff David Williams is an adult citizen and resident of Rhode Island living in Westerly.

6. Plaintiff Mark Wolenc is an adult resident of Rhode Island living in Providence.

7. Plaintiff Patricia Wellhausen is an adult resident of Rhode Island living in Providence.

8. Plaintiff Erica Smith is an adult resident of Rhode Island living in Hope Valley.

9. Plaintiff Brenda Figueroa is an adult resident of Rhode Island living in Providence.

10. Defendant Lee Grossi is Acting Secretary of the R.I. Executive Office of the Department of Health & Human Services, the single state Medicaid agency. In that capacity, he supervises administration of DHS' MA program and is responsible for ensuring that the laws are faithfully executed. He is sued in his official capacity. At all relevant times, he acted under color of state law.

11. Defendant Gary Alexander is Director of the R.I. Department of Human Services and in that capacity is charged with administering the Medicaid program and adopting and implementing its policies, rules, and regulations, which must comply with controlling federal law. He is sued in his official capacity. At all relevant times he acted under color of state law.

**The Federal Medicaid Program**

12. Medicaid is a joint federal-state program authorized by Title XIX of the Social Security Act, 42 U.S.C. §§ 1396-1396v. It enables states to furnish medical assistance to individuals whose income and resources are insufficient to meet the costs of necessary care and treatment and to provide rehabilitation and other services to help individuals attain or retain capability for independence or self-care. 42 U.S.C. § 1396.

13. States are not required to participate in Medicaid. If a state elects to participate, it must comply with federal Medicaid law. 42 U.S.C. § 1396a. Rhode Island participates in the Medicaid program. Rhode Island's Medicaid

program is known as 'Medical Assistance" (MA).

14. Federal law requires states to cover certain categories of individuals, and states may cover others. 42 U.S.C. § 1396a(a)(10). A number of these categories include low-income disabled people.

15. The Social Security Administration administers two cash benefit programs for individuals who are unable to work due to disability: Social Security disability (SSDI) and Supplemental Security Income (SSI). See 42 U.S.C. §§ 401 et seq., §§ 1382-1382e.

16. SSI recipients are automatically eligible for MA in Rhode Island. Other disabled individuals, including those with pending SSI or SSDI applications, are eligible for MA if they meet the SSI definition of disability. DHS determines disability for these applicants. See 42 U.S.C. § 1396a(v).

17. It may take several years for an SSI/SSDI applicant to have an agency hearing and receive a final decision from Social Security.

18. When determining MA disability, Defendants must apply the definition of disability as set forth in Section 1382c(a), which, in turn, is implemented by regulations promulgated by the Commissioner of Social Security. 20 C.F.R. §§ 416.901-416.998. Moreover, 42 C.F.R. § 435.541(d), which implements 42 U.S.C. § 1396a(v), requires Defendants to evaluate evidence in accordance with the SSI regulations set out at 20 C.F.R. §§ 416.901-416.998.

19. When an MA application is denied or not acted upon with reasonable promptness, the applicant is entitled to notice and an opportunity for a hearing before the state agency. 42 U.S.C. § 1396a(a)(3).

**Disability Determination under Federal Law**

20. Section 1382c(a) provides that an individual "shall be considered to be disabled...if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which has lasted or can be expected to last" for at least one year. 42 U.S.C. § 1382c(a)(3)(A). It also provides that, in order to be disabled, an individual must have a physical or mental impairment, or combination of impairments, of such severity that he cannot do previous work or (considering age, education or work experience) any other substantial gainful activity that exists in the national economy. Id., § 1382c(a)(3)(B).

21. When evaluating disability, Defendants must apply the five-step sequential evaluation process set out in the SSI regulations. 20 C.F.R. § 416.920. The five steps are as follows:

(a) Step 1: Is applicant engaged in substantial gainful activity? If so, the applicant is not disabled, and evaluation ceases;

(b) Step 2: Does applicant have a severe impairment or combination of impairments? If not, the applicant is not disabled, and evaluation ceases;

(c) Step 3: Does applicant have an impairment or combination of impairments meeting or equalling one of those listed in the regulations? If so, the applicant is disabled, and evaluation ceases;

(d) Step 4: Given applicant's residual functional capacity (RFC), can s/he perform past work? If so, applicant is not disabled, and evaluation ceases;

(e) Step 5: Given age, education, prior work, and RFC, can applicant do other work? If not, applicant is disabled. 20 C.F.R. § 416.920.

22. Determination of disability is based in part on medical opinions, which are statements from physicians, psychologists, and other acceptable medical sources about diagnosis, symptoms, physical and mental limitations, and nature and severity of impairments. 20 C.F.R. § 416.927(a)(2).

23. Medical opinion from a treating source must be given controlling weight in a disability determination if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 416.927(d).

24. All treating, examining, and non-examining medical source opinion must be weighed by reference to the factors set out in 20 C.F.R. § 416.927(d)(1)-(6). Moreover, specific findings must be made regarding the weight given to medical opinions.

25. Non-examining source medical opinion is never entitled to controlling weight. 20 C.F.R. § 416.927(d), (f).

26. The combined effect of all impairments must be considered when determining disability, without regard to whether any impairment, considered separately, would be severe. If a medically severe combination of

impairments is found, their combined impact must be considered at each step of the sequential evaluation process. 42 U.S.C. § 1382c(a)(3)(G).

27. All symptoms, including pain, must be considered when determining disability, but the existence or severity of pain need not be proven by lab tests or other objective measures. 20 C.F.R. § 416.929.

28. When medically acceptable clinical or lab diagnostic techniques show the existence of a medical impairment which could reasonably be expected to produce pain or symptoms alleged, all evidence, subjective and objective, about intensity and persistence of pain and symptoms must be considered. 42 U.S.C. §§§ 1396a(v), 1382c(a)(1)(H), 423(d)(5)(A).

29. Step 2 of the sequential evaluation process is a de minimis standard designed to screen out frivolous or groundless claims; claims should not be denied at Step 2 unless medical evidence establishes only slight abnormalities having no more than a minimal effect on physical or mental ability to perform basic work activities.

30. If the evidence is insufficient to determine whether impairments are severe at Step 2, the evaluation must proceed to the next step.

**Initial Disability Determination**

31. The MA program is governed by regulations promulgated by DHS and contained in the DHS Manual.

32. The regulations prescribe the standard for determining disability. See DHS Manual §§ 352.15-352.15.20. They do not include the five steps, do not provide for a sequential evaluation, and do not require that impairments

be considered in combination.

33. The regulations impose a stricter severity standard than federal law allows and authorize the determination of severity at Step 2 by reference to the SSI Listings. See DHS Manual §§ 352.15.05, 352.15.10.

34. The regulations do not address the standards applicable to determining weight of medical source opinion.

35. The regulations do not define 'sedentary', 'light', or 'medium' work.

36. When a person applies for MA on grounds of disability, DHS provides him/her with a DHS "MA-63 form" which, among other things, asks the doctor to list diagnoses, identify supportive diagnostic tests, give an opinion on expected duration, and assess physical and mental limitations.

37. The DHS Medical Assistance Review Team (MART) is responsible for making the agency's initial disability determination. It is responsible for ordering necessary records and reviewing the completed MA-63 form, the medical records obtained, and any other evidence submitted by the applicant.

38. On information and belief, the MART is composed of two registered nurses (R.N.), a social worker, and one or more physicians and/or psychological consultants who contract with DHS on a part-time basis.

39. MART members do not examine MA applicants; instead, the team makes its decision by reviewing medical reports and other documents.

40. The majority of initial MART determinations that applicant is 'not disabled' are that impairments are not severe or there is insufficient evidence

of severity.

41. The MART's findings and rationale for finding an applicant 'not disabled' are typically handwritten by, and signed by, a MART R.N. on a DHS form known as the OMR-11.

42. If the MART finds applicant 'not disabled', DHS sends written notice of denial providing opportunity for hearing before a DHS hearing officer.

**Administrative Hearing Procedures**

43. Agency hearing officers are required to review disability de novo.

44. DHS hearing officers are laypeople, not doctors. They cannot have been involved directly in the underlying disability determination under appeal.

45. MART consulting physicians and psychologists rarely, if ever, testify at MA disability hearings. Typically, a MART R.N. or social worker presents the agency's case at hearing; DHS does not obtain testimony from doctors who serve as independent medical advisors to the hearing officer. Generally, the MART record contains no reports or documents signed by a MART consulting physician or psychologist.

46. The great majority of applicants seeking MA on grounds of disability are pro se at the agency hearing.

47. Favorable MA disability hearing decision rates are extremely low; from 9/06 through 9/07, more than 95% of applicants lost their MA hearings. On information and belief, there are currently four hearing officers who hear MA disability cases; as of November 1, 2007, two had found applicant 'not

disabled' in 100% of their MA disability hearing decisions, one hearing officer's denial rate was about 97%, and the other's denial rate was about 95%.

48. The majority of MA hearing decisions find applicant 'not disabled' at Step 2.

49. The hearing officer's rationale for finding applicant 'not disabled' usually coincides with the MART's rationale; when it diverges, the applicant has usually submitted new evidence at or post-hearing.

50. On information and belief, DHS has a policy or practice whereby hearing officers give special or presumptive weight to MART findings and opinions, and/or do not review disability de novo.

51. It is DHS' policy or practice not to identify in hearing decisions the weight given MART findings or opinions and not to explicitly base hearing officer findings upon MART findings or opinions.

52. Hearing officer findings on severity, duration, and functional capacities are, more often than not, inconsistent with opinions from the treating and examining providers, but coincide with MART or MART R.N.'s opinions and findings on the same issue.

53. All, or virtually all, MA hearing decisions issued 9/1/05 on describe the Step 2 standard as requiring a determination of whether an impairment "...is severe enough to prevent [him or her] from performing at least one basic work activity."

54. DHS hearing officers very rarely give treating physician opinion controlling weight and, more often than not, reject it or give it no weight.

55. DHS hearing officers routinely fail to give treating source opinion controlling weight even when it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.

56. DHS hearing officers have a policy or practice of:

(a) failing to weigh opinions of treating and examining medical sources by reference to the factors and standards set out in 20 C.F.R. § 416.927(d);

(b) omitting from their decisions the facts necessary to determine the weight due treating or examining medical source opinion;

(c) weighing treating and examining source opinion arbitrarily and capriciously;

(d) failing to explain the weight given to medical source opinion;

57. DHS hearing officers have a practice or policy of failing to determine and make the initial finding on whether there is objective documentation of an impairment which could reasonably be expected to cause pain or symptoms.

58. DHS hearing officers make findings about physical exertional levels which are inconsistent with the federal definitions of 'sedentary', 'light', and 'medium' work.

**Failure to Comply with Federal Law in Determining Disability**

59. From the initial determination stage through issuance of hearing decision, Defendants systematically fail to determine disability and evaluate

evidence in accordance with 42 U.S.C. §§ 1396a(v), 1382c(a), and incorporating regulations. Among other things, Defendants have a policy or practice of:

(a) failing to apply the five-step sequential evaluation process in sequence, or to incorporate that sequential process into state regulations;

(b) applying an incorrect and overly stringent severity standard by requiring at Step 2 that impairments prevent or preclude work, or substantially and/or markedly limit basic work activities;

(c) determining severity and duration of impairments at Step 2 by reference to the Step 3 SSI Listing of Impairments;

(d) failing to consider impairments in combination;

(e) promulgating regulations imposing an incorrect and unlawful standard for determining severity of impairment;

(f) failing to properly weigh medical source opinion and failing to promulgate regulations incorporating the federal standard for weighing medical source opinion;

(g) failing to properly assess pain and symptoms and failing to promulgate regulations incorporating the applicable legal standards;

(h) unlawfully requiring that existence and severity of pain and symptoms, as well as the extent of physical and mental limitations reported by treating or examining sources, be quantified by objective medical evidence;

(i) unlawfully requiring that pain or symptoms preclude work or prevent or markedly limit basic work activity.

**Facts about Plaintiffs**

60. Plaintiff Williams, a former self-employed carpenter and laborer, has lumbar disc disease confirmed by MRI, and may need surgery. He is disabled by severe pain and, as a result, had to stop working.

61. Plaintiff Williams applied for MA in June 2007 and submitted reports and forms completed by treating physicians which document his condition, his pain, and the various attempts used to treat his pain, including prescription medications and injections. Among other things, his treating physician found he could walk or stand only 2 hours out of 8 and could not perform his prior job.

62. DHS' MART found the evidence insufficient to determine severity and found him 'not disabled.' Attached to this Complaint as Exhibit 1 is a true and complete copy of the form on which the MART documented its determination. Mr. Williams appealed that initial denial. After hearing, the DHS hearing officer issued a decision in February 2008 finding Mr. Williams not disabled. The hearing officer applied incorrect legal standards, including an incorrect severity standard.

63. Plaintiff Wolenc is a man in his 50s with prior work as a general laborer and maintenance man. Plaintiff Wolenc has atrial fibrillation, for which various medications are prescribed. He re-applied for MA in the summer of 2007, alleging severe fatigue and

weakness. He submitted evidence from his treating physician, whose reports document occasional light-headedness, dizzyness, and fatigue. His doctor wrote that he has mild to moderate fatigue which may be related to atrial fibrillation as well as to his medications, and indicated he might be able to do sedentary work, but only on a part-time basis.

64. DHS' MART found Mr. Wolenc's impairments 'not severe', and determined he was not disabled. The MART determination was documented on an OMR-11 form completed and signed by a MART R.N. Plaintiff Wolenc appealed the initial denial and requested an agency hearing.

65. On or about December 6, 2007, the MART found Mr. Wolenc Disabled, and DHS thereafter found him eligible for MA. He is currently receiving MA, but is subject to DHS' periodic redetermination of his disability under 42 C.F.R. §§ 435.541(c)(d) and 435.916.

66. Plaintiff Wellhausen has a history of work as a CNA, but had to stop working due to disability. She applied for MA in June 2007, alleging disability due to chronic fatigue, depression, pain and Hepatitis. She submitted records from treating sources diagnosing serious medical problems; those records included a functional capacities assessment showing moderate and marked limitations and noting her doctor's opinion that she is "quite disabled."

67. DHS' MART found the evidence insufficient to determine severity and, as a result, Plaintiff Wellhausen was found 'not disabled.' The MART

documented its determination on an OMR-11 form completed and signed by a MART R.N. Plaintiff Wellhausen appealed and was awaiting an agency hearing when, in March 2008, the MART found her disabled. She is currently receiving MA, but is subject to DHS' periodic redetermination of her disability.

68. Plaintiff Smith has held multiple jobs, but all for very short periods of time. She applied for MA in February 2007, alleging disability due to multiple mental health problems for which she'd been receiving treatment, including medications. She submitted records from her treating psychiatrist, including a functional capacities assessment documenting marked limitations.

69. DHS' MART found Ms. Smith's impairments 'not severe' and documented that determination on an OMR-11 form completed and signed by a MART R.N. Plaintiff Smith appealed the initial denial and had an agency hearing.

70. On October 16, 2007 the DHS hearing officer issued a decision finding Ms. Smith 'not disabled'. She rejected the treating physician's functional assessment without weighing and making findings on the factors of 20 C.F.R. §416.927(d). She described the Step 2 standard as requiring evidence of impairments "severe enough to prevent her from performing at least one basic work activity" and held that to be severe, an impairment "...must significantly interfere with the ability to do basic work activities." Finding impairments severe, the hearing officer determined RFC at Step 4 by reference to the SSI Listings, holding that to qualify as disabling, mental impairments must be rated "marked" in each of four categories: activities of

daily living, social function, concentration, persistence, and pace, and episodes of decompensation. Finding that this standard was not met, the hearing officer found that Ms. Smith could return to past work.

71. Plaintiff Figueroa applied for MA on or about January 30, 2008, alleging disability due to anxiety attacks and depression. She filed a report listing her symptoms and the multiple medications prescribed for her condition.

72. The DHS MART received and reviewed records from Gateway Health Center, including an April 2007 Treatment Plan and Multi-Axial Assessment, signed by a psychiatrist; reports from her long-term treating psychiatrist based on exams done nearly monthly from 4/07 through 2/08, which identified signs and symptoms of anxiety and listed GAF scores running from 45 to 55; a February 2008 letter from her long-term treating psychiatrist reporting his opinion that Ms. Figueroa was currently unable to work due to anxiety and panic attacks; and progress notes of multiple counseling sessions occurring 8/1/07 through approximately 4/1/08.

73. After reviewing Ms. Figueroa's report and the Gateway records, the MART found Plaintiff Figueroa's impairments not severe.

74. On or about April 23, 208 DHS sent Plaintiff Figueroa a notice denying her MA application. She appealed and is awaiting an agency hearing.

**FIRST CLAIM FOR RELIEF**

1. Plaintiffs incorporate and re-allege by reference the allegations of the previous paragraphs.

2. DHS has failed to adopt the SSI disability standard and to assess evidence and determine MA eligibility in accordance with that standard, in violation of 42 U.S.C. §§§ 1396a(v), 1382c(a), 423(d)(5), as incorporated by the regulations promulgated thereunder.

3. As a result, plaintiffs have been wrongfully denied eligibility for MA, or had claims wrongfully delayed, and have thereby been denied access to necessary health services.

4. By their violation of federal law described herein, Defendants, acting under color of state law, have denied plaintiffs their rights, privileges and immunities secured by the laws of the United States.

**SECOND CLAIM FOR RELIEF**

1. Plaintiffs incorporate and re-allege by reference the allegations of the previous paragraphs.

2. DHS' regulations §§ 352.15.05 and 352.15.10, which prescribe the severity standard, are in conflict with the federal requirements governing Step 2 severity, 42 U.S.C. § 1396a(v), 42 U.S.C. § 1382c(a) and implementing regulations, and are thus preempted pursuant to the Supremacy Clause of the U.S. Constitution, art. IV.

3. DHS' regulations, §§ 352.15-352.15.20, are in conflict with federal law, including 20 U.S.C. § 416.920, which requires application of a five-step sequential evaluation process, and are thus preempted pursuant to the Supremacy Clause of the U.S. Constitution, art. IV.

**THIRD CLAIM FOR RELIEF**

1. Plaintiffs incorporate and re-allege by reference the allegations of the previous paragraphs.

2. The hearing processes described herein violate the Due Process Clause of the U.S. Constitution, Amendment XIV, and federal law, 42 U.S.C. § 1396a(a)(3) and implementing regulations.

3. By their violation of the federal statutes and Constitution, Defendants, acting under color of state law, have denied plaintiffs their rights, privileges, and immunities secured by the laws of the United States.

WHEREFORE, Plaintiffs ask this Honorable Court to:

1. Assume jurisdiction of this case.

2. Issue a declaratory judgment that: (i) DHS' disability-determination policies and practices violate 42 U.S.C. §§ 1396a(a)(3), 1396a(v), and 1382(c)(a), as implemented by regulations promulgated thereunder; (ii) DHS' regulations, §§ 352.15-352.15.15, are inconsistent with the requirements of 42 U.S.C. §§ 1396a(v), 1382c(a) and implementing regulations and, to the extent they are in conflict with federal law, are thus preempted pursuant to the Supremacy Clause of the U.S. Constitution, art. IV, and (iii) DHS' policies and practices deprive plaintiffs of the opportunity for fair and de novo hearing, in violation of 42 U.S.C. § 1396a(a)(3) and regulations promulgated thereunder and have deprived them of benefits without due process of law, contrary to the 14th Amendment to the U.S. Constitution.

3. Issue a permanent injunction requiring DHS to:

(a) comply with the requirements of 42 U.S.C. §§ 1396a(v), 1382c(a) and implementing regulations by applying the appropriate evaluation process and applicable standards, and by making requisite findings, when determining eligibility for MA on the basis of disability;

(b) ensure that its fair hearing process complies with 42 U.S.C. § 1396a(a)(3), its implementing regulations, and the due process requirements of the 14th Amendment to the U.S. Constitution;

(c) establish and implement policies, procedures, and practices that are sufficient to ensure compliance with federal law.

4. Grant plaintiffs costs, as well as reasonable attorney's fees for the services of National Health Law Program pro hac vice counsel, under 42 U.S.C. § 1988.

5. Grant such other relief as the Court deems just and proper.

Plaintiffs
By their attorneys

/s/ Gretchen Bath
Gretchen Bath #4038
R.I. Legal Services
56 Pine St.
Providence RI 02903
(401) 274-2652 x132
FAX: 401-453-0310
email: gbath@rils.org

/s/ Sarah Somers
Sarah Somers
Pro Hac Vice
National Health Law Program
211 North Columbia St.
Chapel Hill, NC 27516
Tel: (919) 968-6771
FAX: 919-968-8855

email: somers@healthlaw.org

Certificate of Service

I certify that I have filed this document electronically and served Defendants with a copy by electronic mail addressed to counsel of record: Brenda D. Baum, Asst. A.G., bbaum@riag.ri.gov, and Jacqueline Kelley, Asst. Director, DHS, dbuffi@dhs.ri.gov, this 4 day of June 2008.

/s/ Gretchen Bath

OMR
Rev. 4/0

RHODE ISLAND
DEPARTMENT OF HUMAN SERVICES

**OFFICE OF MEDICAL REVIEW**
**WORKSHEET**

Client's name: David Williams SS#: [redacted]

Address: ______ DOB: [redacted] 59 (48)

Referral: Medical: ✓ Psych: ______ Filing date 6/26/07

Primary
Complaint: ______

Medical Sources: MRI 3 Stuart

Medical Consultant Review:
I. Diagnosis: Primary: lumbar disk disease 05 — Dr Elliot visits Diepee 9/05
Other: ______

II. Sequential Evaluation:

- Impairment(s) "NOT SEVERE" (Please give rationale): ______ Stuart
- Impairment(s)" SEVERE" (Complete RFC on reverse). includes
- Impairment(s) severe but NOT expected to last 12 months.______ consults
- Impairment(s) meeting listings Yes___ Listing#______ No ___ only
- Impairment(s) equal listing Yes___ Listing#______ No ___
- If yes, please give rationale:______ 10/06 Inj #
- Med Voc allowance (voc rule)______ 10/06

III. Evidence is insufficient to determine severity: ✓

Inj many symptoms + working up to now W/C A

IV. Is medical diary necessary? Yes ______ When? ______
No ______

Post Hearing Re-Referral Comments:

Medical Consultant Response: ______ 12/06 lasting.

Date: 9/6/07 7/07 Closed W/C case

Hopkins

COMPLAINT EXHIBIT 1

MEDICAL ASSISTANCE REVIEW TEAM
FUNCTIONAL CAPACITY NOTES

Vocational Issues: Ø

Education: 10th [redacted]

Work Experience: Carpenter & [redacted]

Language: english

Related

| | Yes | No | Not |
|---|---|---|---|
| A. Impairment(s) meet listings? | ☐ | ☐ | ☐ |
| B. Impairment(s) equal listings? | ☐ | ☐ | ☐ |
| C. Impairment expected to last 12 months? | ☐ | ☐ | ☐ |
| D. Client has functional restrictions? | ☐ | ☐ | ☐ |

If YES, Complete 1-4 below: Client is capable:

| | Yes | No | Not |
|---|---|---|---|
| 1. Sedentary work – lift 10 lbs max<10 frequently; Sit 6 hrs, stand at lest 2hrs. In 8-hr day. | ☐ | ☐ | ☐ |
| 2. Light work – lift 10 lbs frequently; 20lbs max; Stand, walk 6hrs/day – sit 6hrs/day. | ☐ | ☐ | ☐ |
| 3. Medium work – lift 25lbs frequently; 50lbs max; Do frequent bending, walk 6hrs/day – sit 6hrs/day. | ☐ | ☐ | ☐ |
| 4. Heavy work – lift 50lbs frequently; 100lbs max; Do frequent bending, walk 6hrs/day – sit 6hrs/day. | ☐ | ☐ | ☐ |

E. Client has mental/emotional limitations.

| | Yes | No | Not |
|---|---|---|---|
| 1. Can understand and remember short and simple instructions. | ☐ | ☐ | ☐ |
| 2. Ability to maintain concentration for 8hrs/day. | ☐ | ☐ | ☐ |
| 3. Ability to accept instructions and respond to criticism from supervisor. | ☐ | ☐ | ☐ |
| 4. Ability to complete normal work week without interruption from psychological symptoms. | ☐ | ☐ | ☐ |

| | Yes | No | Not |
|---|---|---|---|
| If YES to E 1-4, Can client perform Unskilled work? | ☐ | ☐ | ☐ |