**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **DAVID WILLIAMS, MARK WOLENC, PATRICIA WELLHAUSEN, ERICA SMITH and BRENDA FIGUEROA** | : | **C.A. No. 07-416** |
| **v.** | : | |
| **LEE GROSSI, in his official capacity as Acting Secretary of R.I. Executive Office of Health & Human Services, and GARY ALEXANDER, in his official capacity as Director of R.I. Department of Human Services** | : | |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR OBJECTION TO PLAINTIFFS' MOTION TO COMPEL ANSWERS TO INTERROGATORIES, REQUEST FOR PRODUCTION OF DOCUMENTS AND TO DETERMINE THE SUFFICIENCY OF ANSWERS AND OBJECTIONS TO PLAINTIFFS' REQUEST FOR ADMISSIONS**

## I. INTRODUCTION

This case is before this Honorable Court on Plaintiffs' Motion to compel discovery; specifically answers to interrogatories 3, 4, 5 and 7-21, request for production of documents 3, 4, 6, and 7 and sufficiency of responses and objections to Request for Admissions. Defendants submit that their responses to discovery where legally appropriate given the facts relating to the named Plaintiffs.

## II. TRAVEL OF THE CASE AND STATEMENTS OF THE FACTS

Plaintiffs are five (5) individuals who contend that they were improperly denied Medical Assistance benefits either by the R.I. Department of Human Services Medical Assistance Review Team (hereinafter "MART") and/or by a hearing officer after an administrative hearing of their appeal. It is important to note that two of the named Plaintiffs, David Williams and Erica Smith, failed to appeal their adverse hearing

PDF created with pdfFactory trial version www.pdffactory.com

decisions to the Rhode Island Superior Court under the State's Administrative Procedure's Act, *R.I. Gen. Laws § 42-35-1 et seq*. Moreover, two Plaintiffs, Marc Wolenc and Patricia Wellhausen were initially denied Medical Assistance but after submitting additional medical records, were found eligible. The fifth Plaintiff, Brenda Figueroa, was denied Medical Assistance by the MART and is awaiting an administrative hearing.

Plaintiffs allege deficiencies in the MART and Appeals' Officers analysis. The Plaintiffs contend that there are some "patterns" and "practices" in DHS' analysis that violate federal law. Defendants disagree. This case has never been certified as a class action. Plaintiffs have not specifically demonstrated that the alleged errors in analysis apply to their case. By way of example, Plaintiffs claim that "agency hearings are unfair, and that DHS Hearing officers fail to review disability de novo, give special, unstated weight to DHS MART findings and determinations and reject evidence arbitrarily and capriciously." *See* Document 24 at Page 4. However, Plaintiffs cannot demonstrate these allegations as it pertains to the two named Plaintiffs, Smith and Williams. Plaintiffs Smith and Williams may be disappointed and disagree with the hearing officer's decision but it does not demonstrate that a de novo hearing was not provided nor that the MART's statements or opinions were given undue weight. In fact, the hearing officers in Smith and Williams' cases did not agree with the MART's reasoning; rather, after a thorough review of the evidence, the hearing officers found that "disability" had not been demonstrated for reasons different than those of the MART. The hearing officers' decisions and individual reasoning were not arbitrary and capricious in the Smith and Williams. Moreover, the appropriate court and jurisdiction to review whether a hearing



PDF created with pdfFactory trial version www.pdffactory.com

officers' decision was arbitrary and capricious based on the specific evidence and case is the Rhode Island Superior Court under the Administrative Procedures Act. *See* R.I. Gen. Laws 42-35-15.

Plaintiffs' propounded discovery to Defendants which entailed twenty-one (21) interrogatories, eight (8) requests for production of documents and two hundred fifty (250) requests for admissions. Defendants timely responded to the discovery. Plaintiffs filed the instant motion to compel, which brings the issue before this Honorable Court.

## III. ARGUMENT

### A. INTERROGATORES

Plaintiffs' now move to compel answers to interrogatories 3, 4, and 7-21.

#### i. Interrogatory 3

In Interrogatory 3, Plaintiffs asked Defendants to:

> Describe the precise roles the MART serves at the agency hearing level, excluding the role of presenting DHS' case at hearing.

Defendants responded to interrogatory number 3 that:

> Objection to the interrogatory as to the term "precise roles" is vague and ambiguous. Without waiving said objection, the MART reviews, evaluates, assesses and processes applications for MA eligibility; at the agency hearing level, the MART provides a presentation of the facts reviewed in a particular clients' case, and testifies as to why they did not meet the MA requirements, answers questions posed by the hearing officer, the claimant or their legal counsel and asks questions of the claimant. They review the testimony and additional records presented at the hearing; as well as any additional medical evidence received while the record of hearing was held open (if applicable) and provide an e-mail response to the hearing officer as to whether there is sufficient evidence at that point to reverse the decision. If there is not sufficient evidence to reverse the decision the e-mail usually includes a summary of the records received, and a brief summary of their contents in relationship to the decision remaining unchanged. The e-mail is also provided to the claimant with a letter.



PDF created with pdfFactory trial version www.pdffactory.com

Plaintiffs' claim in the instant motion that Defendants did not fully respond and identify "all specific roles the MART and its member play at the hearing level ". See Plaintiffs' Memorandum of Law in Support of Motion to Compel [Document 33] at page 66.

Defendants believe that their objection to Plaintiffs' use of the phrase "precise roles" in the interrogatory is appropriate as the term is vague and ambiguous. The Plaintiffs' claim that Defendants' did not fully respond to the interrogatory is evidence that the term are ambiguous. Defendants submit that they responded in full to the interrogatory and described the role of the MART at the administrative hearing level. It is not apparent from the interrogatory the role or information that Plaintiffs' believe are absent.

Wherefore, Defendants pray that Plaintiffs' Motion to Compel Interrogatory 3 is denied.

**ii. <u>Interrogatory 4</u>**

In Interrogatory 4 Plaintiffs asked Defendants:

> <u>DHS Manual</u> § 352.15.20 provides that the MART is responsible for "issu[ing] a decision on whether the applicant meets the criteria for disability based on the evidence submitted." State whether it is Defendants' position that this regulation gives the MART a role in the determination of disability not only at the initial determination level, but also at the agency hearing level.

Defendants responded to interrogatory number 4 that:

> At the agency hearing level, the MART provides a presentation of the facts reviewed in a particular clients' case, and testifies as to why they did not meet the MA requirements. They review the testimony and additional records presented at the hearing; as well as any additional medical evidence received while the record of hearing was held open (if applicable) and provide an e-mail response to the hearing officer as to



PDF created with pdfFactory trial version www.pdffactory.com

> whether there is sufficient evidence at that point to reverse the decision. If there is not sufficient evidence to reverse the decision the e-mail usually includes a summary of the records received, and a brief summary of their contents in relationship to the decision remaining unchanged.

Plaintiffs' assert that Defendants failed to answer the interrogatory. Document 23 at page 67. Defendants' response accurately describes the MART's role at the agency level. The Defendants explained that if additional records are provided at the administrative hearing or thereafter that the MART will review the additional evidence and convey its position by email to the hearing officer and send a copy to the individual applicant. The Defendants believe that they fully and adequately responded to Interrogatory 4 as phrased. The decision rendered by the hearing officer at the administrative hearing level is de novo and independent of any disability determination by the MART. DHS Manual § 352.15.20.

Wherefore**,** Defendants pray that Plaintiffs' Motion to Compel a more responsive answer to Interrogatory 4 is denied.

**iii. Interrogatories 7-9, 11-21**

Plaintiffs phrased interrogatories 7-9, 11-21 in virtually identical fashion. These interrogatories ask Defendants to identify all of the docket numbers of DHS hearing decisions issued between September 1, 2005 until the date the interrogatories were served which essentially support Defendants denial of a specified request for admissions. A review of the admissions at issue reveal that aside from three of the admissions, Defendants did not "deny" the admissions as the interrogatory states; but rather Defendants indicated that the information sought by the specific admission was overly broad and not likely to lead to the discovery of admissible evidence at trial and as this type of statistical information is not maintained it would be unduly burdensome to



PDF created with pdfFactory trial version www.pdffactory.com

compile as all MA disability decisions from 9/1/05 through 12/31/07 would have to be reviewed. *See* Exhibit A.

Defendants submit that the objections interposed to interrogatories 7-9, 11-21 are appropriate. Defendants do not maintain the information (i.e. lists of specific docket numbers for a 2 ½ year period that would be responsive to the discreet statements posed in the respective admissions. It would be unduly burdensome to require Defendants to compile it. In order to respond to interrogatories 7-9 and 11-21, Defendants would have to independently review each decision issued from 9/1/05 to 11/30/07, determine whether and note the specific docket number:

- If it was "favorable' or "unfavorable";
- in which the hearing officer identified the Step 2 severity legal standard as requiring a determination of whether impairments are severe enough to "prevent him (her) from performing at least one basic work activity....;
- in which the hearing officer specified the legal standard applicable to assessing pain and symptoms for purposes of MA;
- in which the hearing officer made an initial finding on whether or not medical signs or laboratory finding show a medically-determinable impairment which could reasonably be expected to produce pain or symptoms;
- in which the hearing officer credited third party lay testimony about pain and/or symptoms;
- in which the hearing officer found that the existence of a mental impairment had been shown by medically-acceptable clinical diagnostic



PDF created with pdfFactory trial version www.pdffactory.com

techniques, despite the fact that there were no psychiatric evaluations, psychological test results, IQ testing, or other objective psychiatric test results in the hearing record;

- in which the hearing officer considered at Step 3, 4, or 5 medical impairments which s/he had previously found not severe at Step 2;
- in which the hearing officer suggested or found that claimant had been noncompliant with recommended treatment, but explicitly considered whether claimant had good cause for failing to follow recommended treatment;
- in which the hearing officer expressly cited a MART finding or opinion in support of a hearing officer's finding or conclusion;
- in which the hearing officer identified the weight s/he gave to MART finding or opinion;
- in which the hearing officer explicitly gave controlling weight to a treating source opinion;
- in which the hearing officer explicitly credited or explicitly gave great (but not controlling) weight to treating or examining source opinion; and
- in which the hearing officer made a finding on whether treating source opinion is "well supported by medically-acceptable clinical and laboratory diagnostic techniques" and is not "inconsistent with other substantial evidence" in the record.

Plaintiffs do not ask for one example evidencing the foregoing; but rather ***<u>all</u>*** decisions that evidence the foregoing for decisions rendered during a 2 1/3 year period –



PDF created with pdfFactory trial version www.pdffactory.com

a number of decisions that Plaintiffs number at approximately four hundred (400). The Defendants have made the hearing decisions available to Plaintiffs' legal counsel to review in response to a request of production of documents.[1] In fact, Plaintiffs' legal counsel Rhode Island Legal services, get the hearing decisions mailed to them in redacted form as a matter of course; therefore, in theory, they could have been compiling data and specific information since the fall of 1995.

Defendants further submit that the information sought by interrogatories 7-9 and 11-21 is overly broad and not likely to lead to the discovery of admissible evidence at trial. This case concerns five specific individuals; it is not a class action. The Defendants acknowledge the authenticity of hearing decisions for Plaintiffs Williams and Smith. Defendants submit that hearing decisions issued for non-parties or several years before are not likely to lead to admissible evidence for these named individuals.

Wherefore**,** Defendants pray that this Honorable Court sustain the objections and deny Plaintiffs' Motion to Compel Interrogatories 7-9 and 11-21.

iv. **Interrogatory 10**

In Interrogatory 10 Plaintiffs asked Defendants to:

> Identify by DHS Docket numbers all MA disability hearing decisions issued 9/1/05 through the date these Interrogatories are served in which

---

[1] Request for Production No. 8: Copies of all DHS hearing decisions issued 9/1/05 on. For purposes of this paragraph, production shall be made by making copies of the hearing decisions available at DHS' offices during business hours for Plaintiffs' counsel's review and copying.

Response: Defendants state that copies of all DHS hearing decisions, with names redacted in order to protect the privacy of the appellants, and issued since April 1987, have been forwarded, on a monthly basis to the Rhode Island Legal Services. However, in the interest of justice, Defendants will again make copies of the hearing decisions available at DHS' offices during business hours for Plaintiffs' counsel's review and copying.



PDF created with pdfFactory trial version www.pdffactory.com

the hearing officer specifies what legal standard is applicable to determining weight due "medical opinions", as defined in 20 C.F.R. 416927(a)(2).

Defendants responded to interrogatory number 10 that:

> **Response:** Objection, this interrogatory is overly broad, the information sought is not likely to lead to the discovery of admissible evidence at trial as it does not specifically pertain to the administrative cases of the named Plaintiffs beyond the information provided in the response to the admission and this type of statistical information is not maintained and it would be unduly burdensome to compile. Without waiving said objection, attached as Exhibits B and C are true copies of the administrative decisions in the cases of Plaintiffs Smith and Williams – dockets 07-868 and 07-1507 respectively.

Responding to interrogatory 10, like interrogatories 7-9 and11-21, would require Defendants to independently review each decision issued from 9/1/05 to 11/30/07, determine which ones specify the legal standard applicable to determining weight due "medical opinions", as defined in 20 C.F.R. 416927(a)(2). Plaintiffs do not ask for one example evidencing the foregoing; but rather *all* decisions that evidence the foregoing for decisions rendered during a 2 1/3 year period – a number of decisions that Plaintiffs number at approximately four hundred (400). The Defendants submit that interrogatory number 10 would be unduly burdensome for Defendants to compile. Moreover Defendants have responded to interrogatory number 10 as it pertains to the named Plaintiffs by indicating that true and accurate copies of Plaintiffs Williams and Smith's hearing decisions were attached.

Wherefore**,** Defendants pray that this Honorable Court sustain the objection and deny Plaintiffs' Motion to Compel Interrogatory 10.



PDF created with pdfFactory trial version www.pdffactory.com

**B. REQUEST FOR ADMISSIONS**

Plaintiff asks this Honorable Court to review and determine the sufficiency of Defendants' responses or objections to one hundred ninety-one (191) of the two hundred fifty (250) requests for admissions propounded. Defendants submit that their responses or objections are appropriate. Rather than review the requests in numerical order, Defendants have grouped the admissions into four (4) categories: (1) admissions that contain ambiguous or vague terms and would be overly burdensome to compile the "statistical" or quantify the information as sought by Plaintiffs; (2) admissions that refer to specific cases, by docket number, heard at the administrative appeals level at the Department of Human Services; (3) admissions that seeks statistical or numerical information that the Defendants do not maintain and would have to review individual hearing decisions to calculate and (4) admissions that do not fall within the three (3) prior categories. Defendants will address these categories and have provided the individual admissions in attached exhibits.

**1. Admissions that contain ambiguous or vague terms and would be overly burdensome to compile the "statistical" or quantify the information as sought by Plaintiffs.**

Plaintiffs ask this Court to determine the sufficiency of the responses or objections to forty-one (41) admissions[2] that contain words such as "typically", "most", "multiple", "sometimes", "virtually none", "majority", "routinely", "more often than not" and "consistent". See Exhibit B. The objections that were asserted share two common

[2] The admissions at issue in this category are numbers 2, 4, 33, 38, 55, 58, 72, 83, 85, 90, 95, 101, 102, 109, 111, 115, 136, 140, 143, 159, 160, 163, 168, 169, 191, 192, 200, 201, 202, 203, 207, 208, 211, 212, 227, 228, 229, 234, 240, 249 and 250. The specific admissions and responses are set forth at Exhibit B.



PDF created with pdfFactory trial version www.pdffactory.com

themes: vagueness or ambiguity of the wording and it would be overly burdensome to compile the numerical or statistical information sought by Plaintiffs.

In support of their claim that the objections should be stricken, Plaintiffs merely recite the specific word and claim that it is not vague or ambiguous. Defendants disagree. When applying the definition(s) of the respective words in the context of the admission, the terms are vague and not appropriate for admissions. Wherefore, Defendants pray that the Plaintiffs' Motion is denied.

Plaintiffs use the words "typically", "most", "multiple", "sometimes", "virtually none", "majority", "routinely", "more often than not" and "consistent". These words are defined as:

> "*Typically*" – 1.of the nature of or serving as a type or representative specimen;
> 2. conforming to a particular type; 3.Biology. exemplifying most nearly the essential characteristics of a higher group in natural history, and forming the type: *the typical genus of a family*; 4. characteristic or distinctive: ***He has the mannerisms typical of his class***; 5. pertaining to, of the nature of, or serving as a type or emblem; symbolic. ***See*** http://dictionary.reference.com/browse/typically
>
> "*Most*" – 1. in the greatest quantity, amount, measure, degree, or number: *to win the most votes*; 2. in the majority of instances: *Most operations are successful*; 3. greatest, as in size or extent: *the most talent*. ***See*** http://dictionary.reference.com/browse/most
>
> "*Multiple*" – 1. consisting of, having, or involving several or many individuals, parts, elements, relations, etc.; manifold. ***See*** http://dictionary.reference.com/browse/multiple
>
> "*Sometimes*" – on some occasions; at times; now and then. ***See*** http://dictionary.reference.com/browse/sometimes.
>
> "*Virtually none*" - There are no dictionary entries for virtually none. ***See*** http://dictionary.reference.com
>
> "*Majority*" – 1. the greater part or number; the number larger than half the total (opposed to MINORITY): *the majority of the population*. ***See***



PDF created with pdfFactory trial version www.pdffactory.com

http://dictionary.reference.com/browse/majority

"*Routinely*" – 1. a customary or regular course of procedure; 2. commonplace tasks, chores, or duties as must be done regularly or at specified intervals; typical or everyday activity: ***the routine of an office***; 3. regular, unvarying, habituals, unimaginative, or rote procedure; 4. an unvarying and constantly repeated formula, as of speech or action; convenient or predictable response: ***Don't give me that brotherly-love routine!*** ***See*** http://dictionary.reference.com/browse/all/routinely

"*Rationale*" – 1. the fundamental reason or reasons servicing to account for something; 2. a statement of reasons; 3. a reasoned exposition of principles. ***See*** http://dictionary.reference.com/browse/rationale

"*More often than not*" – usually; as a rule; "by and large it doesn't rain much here" [syn:by and large] ***See*** http://dictionary.reference.com/bowse/more%20often%20than%not

"*Consistent*" – 1. agreeing or accordant; compatible; not self contradictory:
***His views and actions are consistent***; 2. constantly adhering to the same principles, course, form, etc.: ***a consistent opponent***; 3. holding firmly together; cohering; 4. Archaic. Fixed; firm. ***See*** http://dictionary.reference.com/browse/consistent

The use of these words in the specific admission demonstrates that the words can result in numerous interpretations of the same admission and contrary to the intended purpose of admissions. By way of example,

At Admission 2, Plaintiffs seek to have Defendants admit or deny whether "[t]he record which the MART reviews in order to determine disability typically contains one or more MA-63 forms completed by a treating or examining medical source." The Defendants responded to the admission that:

> Objection to Paragraph 2 as the word "typically" is ambiguous and vague and the request is not likely to lead to the discovery of admissible evidence at trial. Without waiving said objection, the Defendants admit that the record that the MART reviews may or may not contain an MA-63 form completed by a treating or examining physician. The Defendants further submit that the DHS field office will forward an applicant's file to



PDF created with pdfFactory trial version www.pdffactory.com

review if it contains an AP 70 form and signed DHS 25s. The Defendants admit that Plaintiffs Williams, Smith and Wellhausen's cases had an MA-63 form in their file when the MART conducted a review. Defendants admit that Plaintiff Wolenc did not have a completed MA-63 form filed when the MART conducted its review but subsequently provided one.

The Defendants objected to the term "typically" and went on to document the different circumstances when cases are referred to the MART. It is uncertain whether Plaintiffs attribute a certain number to the word "typically" and if they do, this type of information is not maintained by the Defendants that would allow them to specifically admit or deny the admission. The same analysis and difficulty in interpretations exist as to Plaintiffs' use of the word "typically" in Admission 200.

The Defendants also objected to the term "most" in Admission 4. By the very definition, here is no specific quantity attached to it. Plaintiffs in Admission 4 asked Defendants to admit or deny that "[m]ost claimants are pro se at MA disability hearings." Defendants responded:

> ***RESPONSE***: Objection to the term "most" as it is vague, ambiguous and susceptible to different interpretations. Without waiving said objection, the Defendants admit that: (A) Plaintiff Smith was represented by Rhode Island Legal Services at her administrative appeal of her denial of eligibility for MA; (B) Plaintiff Williams was represented by Rhode Island Legal Services at his administrative appeal of her denial of eligibility for MA; (C) Plaintiffs Wolenc and Wellhausen did not have administrative appeal hearings as they were found eligible for Medical Assistance after DHS was presented with additional medical records; and (D) there are claimants that appear *pro se* for the administrative hearing on the appeal from the denial of MA.

Defendants complied with Rule 36 in its response.

Plaintiffs also used the term "multiple" in twenty-eight (28) admissions. One ground for the objection, was that the term was vague and ambiguous. By the definition of the word there is no specific number or percentage attached to the term. The word



PDF created with pdfFactory trial version www.pdffactory.com

could be defined by the number three (3) or some number greater than. The Plaintiffs use these words in the context of administrative hearing decisions. By way of example:

> 33. In multiple decisions issued in 2006 and 2007 DHS hearing officers cited the fact that claimant doesn't require an assistive device to ambulate in support of the Step 2 finding that impairments aren't severe.
>
> 55. DHS issued multiple MA disability hearing decisions 9/1/05 on, in which hearing officers cited the fact that a treating or examining medical source rated limitation of physical or mental work activities as only "moderate," not "marked" or "severe," in support of a finding that impairments were not severe at Step 2.
>
> 85. DHS has issued multiple MA disability hearing decisions 9/1/05 on, in which claimant and/or a treating or examining medical source reported pain or other symptoms, and the hearing officer failed to:
>
> (a) make a finding on whether or not medical signs or laboratory findings show a medically-determinable impairment which could reasonably be expected to produce pain or symptoms;
> (b) evaluate and make findings on all evidence, objective and subjective, in accordance with the rules set out in 20 C.F.R. 416.929(c), when the existence of a medically-determinable impairment which could reasonably be expected to produce pain or symptoms is established.
>
> 136. In multiple decisions issued in 2007, the hearing officer did not identify what specific functional limitations were reported in one or more MA-63 forms in the record, and merely attached a general label to the assessment, describing it as showing, e.g., "slight", "moderate", "sedentary", or "extreme" limitations.

The Defendants submit that the use of the word "multiple" is vague and ambiguous in the context of the admissions. Moreover, Defendants do not maintain this type of numerical data with respect to the decisions and to require them to review approximately four hundred (400) hearing decisions to find the number that fit the specific scenario would be an undue burden.

Lastly, even if the Defendants were to interpret the word "multiple" to mean three (3), such information would not be reasonably calculated to lead to the discovery of



PDF created with pdfFactory trial version www.pdffactory.com

admissible evidence in this case. Even assuming Plaintiffs' "pattern or practice" argument, three out of approximately four hundred decisions that contain the criteria set forth in the admissions cannot be said to support that theory.

Plaintiffs use the term "sometimes" in two (2) admissions. Once again, Defendants submit that this term is vague as it cannot be specifically quantified. By way of example, Defendants refer this Court to admissions 38 and 72 which state:

> 38. DHS hearing officers have sometimes consulted the SSI Listings of impairments when making findings at Steps 4 or 5; and
>
> 72. DHS hearing officers sometimes require:
> (a) that pain be found "severe";
> (b) that the existence and severity of pain be established by medically acceptable clinical and laboratory diagnostic techniques;
> (c) that pain meet the durational standard;
> (d) that pain preclude all work or work activities, in order to be considered when determining RFC.

The term "sometimes" is vague and makes it impossible for Defendants to admit or deny, even if they contained time periods.

Plaintiffs also use the term "virtually none" in one (1) admission; number 83. Admission 83 states:

> In none, or virtually none, of the MA disability hearing decisions issued 9/1/05 through 12/31/07 does the hearing officer identify the legal standard applicable to assessment of pain and symptoms.

Defendants submit that a search of the on-line dictionary and Black's Law Dictionary do not set forth any definition for this term. Defendants submit that the term "virtually none" is vague and ambiguous on its face. Moreover, the Defendants do not maintain or compile this information and it would be an undue burden for Defendants to review approximately four hundred (400) hearing decisions to be in a position to admit or deny



PDF created with pdfFactory trial version www.pdffactory.com

this admission. Defendants further submit that this information is not reasonably calculated to lead to the discovery of admissible evidence as it is not a claim asserted by any of the Plaintiffs.

Plaintiffs also use the term "more often than not" in one (1) admission; number 168. Once again, Defendants submit that this term is vague as it cannot be specifically quantified. Admission 38 states:

> More often than not, in decisions issued 9/1/05 through 11/30/05, the hearing officer's rationale for finding claimant not disabled was consistent with the MART's rationale, but inconsistent with the only treating and/or examining medical source opinion of record, in decisions issued 9/1/05 on.

Defendants submit that the term "more often than not" is vague and ambiguous on its face. Moreover, the Defendants do not maintain or compile this information and it would be an undue burden for Defendants to review approximately four hundred (400) hearing decisions to be in a position to admit or deny this admission. The Defendants submit that this information is not reasonably calculated to lead to the discovery of admissible evidence as it is not a claim asserted by any of the Plaintiffs.

Plaintiffs also use the terms "rationale" and "consistent" in admission number 169, which Defendants contend are vague and ambiguous terms. Admission 169 states:

> The hearing officer's rationale for finding claimant not disabled was consistent with the MART's most recent rationale in 2/3 or more of the MA disability hearing decisions issued 9/05 through 11/30/07.

The Defendants that these terms are susceptible to different interpretations; thereby making them vague for use in an admission. Does the admission mean that the hearing officer and MART relied on the exact same evidence in reaching their findings that an applicant was not "disabled" for purposes of Medial Assistance; does it mean the hearing



PDF created with pdfFactory trial version www.pdffactory.com

officer and Mart agreed on one piece of medical evidence; more than one? The terminology used by Plaintiffs' make this admission difficult for Defendants to understand or admit or deny. Moreover, as stated numerous times in this memorandum, the Defendants do not maintain or compile this information and it would be an undue burden for Defendants to review approximately four hundred (400) hearing decisions to be in a position to admit or deny this admission. The Defendants submit that this information is not reasonably calculated to lead to the discovery of admissible evidence as it is not a claim asserted by any of the Plaintiffs

Plaintiffs use the word "majority" in four (4) admissions. The Defendants submit that the term is vague and ambiguous as applied to the admissions. Is the word "majority" intended to reflect that one more than half of the decisions during the stated time frame? By way of example, Plaintiffs have asked Defendants to admit or deny that:

115. In the majority of hearing decisions issued 9/1/05 on in which the hearing officer proceeded past Step 3, s/he found that impairment(s) didn't meet one or more SSI Listings, and did not go on to consider medical equivalence.

201. In the majority of MA disability hearing decisions issued 9/1/05 through 11/30/07 in which the hearing officer gave controlling weight to a treating or examining source opinion, s/he did so without having made the finding described in the preceding Admission.

211. In the majority of MA disability hearing decisions issued 9/1/05 on, in which the hearing officer rejected or discounted medical source opinion, s/he did so on grounds that the extent of limitations reported were not documented by objective evidence.

Defendants submit that in addition to the vague wording; that their objection should be sustained as they do not maintain the statistics that would allow them to readily



PDF created with pdfFactory trial version www.pdffactory.com

admit or deny the admissions and that they would have to review approximately 400 or more decisions to determine the number that fit within the very particular scenarios.

Lastly, Plaintiffs used the term "routinely" in Admission 143. Specifically Admission 143 states:

> When considering whether a claimant is compliant with treatment, DHS hearing officers routinely fail to consider whether claimant has good cause" for not following recommended treatment.

Defendants states that the term "routinely" is vague; however, as they are required to under the rule, Defendants responded that:

> Objection to the term "routinely" is vague, ambiguous and susceptible to different definitions and interpretations. Without waiving said objection, Defendants admit that it is DHS's position that the standard set forth in 20 C.F.R.§404.1530 is the appropriate standard on the issue of whether a claimant has good cause for not following recommended treatment. Defendants deny paragraph 143 as it pertains to the named Plaintiffs.

Defendants submit that their response was legally appropriate and they pray that it is allowed to stand.

For the above-stated reasons, the Defendants pray that this Court deny Plaintiffs' Motion to Compel.

**2. <u>Admissions that Refer to DHS Administrative Docket Numbers and the Specific Facts of The Decisions</u>**

Plaintiffs ask this Court to determine the sufficiency of the objections of eight-seven (87) admissions[3] that refer to specific facts or rulings in R.I. Department of Human

[3] The admissions at issue in this category are numbers 26, 27, 28, 31, 35, 36, 37, 41, 46. 47, 48, 52, 53, 54, 56, 57, 59, 60, 61, 62, 63, 64, 65, 66, 70, 71, 75, 76, 77, 78, 79, 80, 82, 88, 89, 91, 92, 93, 94, 96, 97, 98, 99, 100, 103, 104, 105, 106, 107, 117, 138, 139, 142, 161, 162, 164, 165, 205, 206, 209, 210, 214, 215, 216, 217, 218, 219, 220, 222, 223, 224, 225, 226, 230, 231, 232, 233, 235, 238, 239, 241, 242, 243, 244, 246, 247 and 248. The specific admissions and responses are set forth at Exhibit C.



PDF created with pdfFactory trial version www.pdffactory.com

Services' administrative hearing decisions. See Exhibit C. The objections that were asserted share a common theme that the admissions is not likely to lead to the discovery of admissible evidence at trial and none of the dockets pertain are appeals of the named Plaintiffs.

The specific factual information contained in hearing decisions of non-parties is not reasonably calculated to lead to the discovery of admissible evidence. The admissions address specific medical conditions of the applicants. The admissions cite a minuscule fraction of the evidence heard and considered by hearing officers. Each decision is unique, based one each applicant's testimony and medical evidence. This is demonstrated by each of the request that cites a docket case number. Even Plaintiffs' claims of "pattern or policy" cannot be proven based on those admissions.

Moreover, Plaintiffs' admissions make their own subjective characterizations of the evidence. Not only is the information is the request not reasonably calculated to the discovery of admissible evidence but the phrasing is inappropriate.

By way of examples of the foregoing, Defendants refer the Court to Admissions:

Request 79 states:

> In a decision issued in 2007, DHS Dkt.07-569, medically-acceptable evidence documented the existence of pancreatitis, and the hearing officer:
> (a) found that the record establishes that claimant has "intermittent [hearing officer emphasis] bouts" of pancreatitis, which result in pain, nausea, and diarrhea;
> (b) rejected the treating source's functional assessment on grounds objective medical evidence didn't support those limitations;
> (c) found "no evidence" that pancreatitis and pain are so severe as to "markedly limit and significantly interfere with" ability to do basic work activities for a continuous period of at least 12 months.



PDF created with pdfFactory trial version www.pdffactory.com

Request 77 states:

> In DHS Dkt. 07-963, decision issued in 2007:
> (a) medically-acceptable evidence documented the existence of strabismus and other visual impairments;
> (b) the hearing officer rejected claimant's reports of severe headache due to vision problems, saying that although it may be "logical" to assume that headaches might occur from the vision impairments, there would need to be "objective evidence to show that her headaches occur on a consistent basis to such level of severity to result in limitations of at least one basic work activity."

Similarly Request 100 states:

> In a decision issued in 2007, DHS Dkt. 07-1146, asthma and obstructive sleep apnea was shown by medically-acceptable diagnostic techniques, but the hearing officer rejected claimant's reported symptom of shortness of breath, for lack of objective information to "quantify" the severity of his disorders.

The requests also document extremely specific factually evidence in the hearing decisions cited by document number that are neither relevant to the named Plaintiffs, their specific analysis or the claimed "pattern" or "practice" deficiencies that the Plaintiffs claim to have suffered. By way of example, Defendants refer the Court to Request 139 that states:

> In a decision issued in 2007, DHS Dkt. 07-548, the hearing officer cited a physician's questionnaire, describing it as showing that claimant "could easily" manage a light exertional level job, without identifying what specific information was reported in that questionnaire.

And Request 205 that states.

> In DHS Dkt. 07-724, both the MART and the hearing officer found no impairments severe at Step 2; there were at least 2 MA-63s in the hearing record, but the hearing officer didn't identify what the sources reported on the functional assessment portion of the MA-63.

And Request 206 that states

> In a decision issued in 2007, DHS Dkt. 07-1369, the hearing officer:



PDF created with pdfFactory trial version www.pdffactory.com

> (a) discounted the opinion of the current treating neurologist set out in a questionnaire about pain and fatigue caused by Parkinson's disease, without identifying what the doctor reported and without identifying the doctor as a neurologist or specialist;
> (b) gave controlling weight to the portion of the opinion of the former treating doctor, whom the hearing officer identified as a neurologist, related to physical limitations, but rejected the same doctor's opinion about mental limitations, on grounds the latter opinion was "outdated and unsupported" by objective evidence, even though both opinions were set out in the same MA-63 form.

These requests are examples of the factually specific information requested by Plaintiffs in the request for admissions that reference specific docket numbers. These factually specific requests neither relate to the named plaintiffs nor did they assist in the pattern or policy theory Plaintiffs appear to be asserting. The claims of hearing officer error that the Plaintiffs appear to be asserting in the request for admissions that cite specific docket numbers are more properly before the R.I. Superior Court under the state's Administrative Procedures Act.

Wherefore, Defendants pray that Plaintiffs' Motion to Compel is denied.

**3. <u>Admissions that Seeks Statistical or Numerical Information that the Defendants Do Not Maintain and Would Have to Review Individual Hearing Decisions to Calculate</u>**

Plaintiffs ask this Court to determine the sufficiency of the objections of fifty-five (55) admissions[4] that ask the Defendants to admit or deny statistical or numerical information that the Defendants do not maintain and would have to compile by reviewing

[4] The admissions at issue in this category are numbers 12, 14, 15, 16, 17, 18, 19, 22, 23, 24, 25, 34, 39 and 40, 42, 44, 45, 49, 50, 51, 69, 73, 86, 137, 141, 144, 166, 170, 171, 172, 173, 174, 175, 176, 177, 178, 179, 180, 181, 182, 183, 184, 185, 186, 193, 195, 196, 197, 198, 199, 204, 213 and 245. The specific admissions and responses are set forth at Exhibit D.



PDF created with pdfFactory trial version www.pdffactory.com

approximately four hundred (400) decisions. *See* Exhibit D. The objections that were asserted share a common theme that the admissions are unduly burdensome to compile.

In support of their speculative assertion that it would not be unduly burdensome to compile the information sought, Plaintiffs argue that DHS is required to make hearing decisions available for public inspection and DHS has a computer system named "Fairhear" which captures certain data. See Document 24 at pages 5-6. Plaintiff have no knowledge of whether "Fairhear" can compile the specific statistical information it seeks or that it is merely a tickler system to ensure that the 180 day "time frame" prescribed by federal regulation and state consent decree. Contrary to Plaintiffs' assertion, the consultant who created the FairHear computer system no longer serves as an independent contractor for the Department of Human Services. The information that the appeals officers can glean from the FairHear program is limited to the number of requests for hearings and the number of hearings convened during a set time period and not the information Plaintiffs seek in their request for admissions. Thus, the individual paper decisions for 2 1/3 years would have to be reviewed to compile the various and very specific information sought. Such a task would be monumental and unduly burdensome on the Defendants.

Moreover, certain admissions are akin to looking for a needle in a haystack. By Plaintiffs' calculations, they seek the Defendants to review roughly 400 decisions that were rendered from September 1, 2005 to November 30, 2007, *see* Document 24 at p.6, to find, in some cases as few as one (1) decision that meets the standard set in the request for admission. By way of example of the "needle in a haystack" analogy, the Defendants refer the Court to the following requests for admissions:



PDF created with pdfFactory trial version www.pdffactory.com

39. In at least two MA disability hearing decisions issued in 2007, the hearing officer's discussion at Step 4 and/or 5 included the following statement:

In order to determine the residual functional capacity, the degree of limitation resulting from the impairment must be assessed. Severe or marked limitations must be found relative to the following four areas of activities, activities of daily living (ADL), social function, concentration persistence or pace; and episodes of decompensation.

49. In at least ten hearing MA disability hearing decisions issued 9/05 on, the hearing officer assessed severity at Step 2 by determining whether impairments markedly limit ability to function.

50. In at least 15 hearing decisions issued 9/1/05 on, the hearing officer assessed severity at Step 2 by determining whether impairments "markedly limit and/or significantly interfere" with ability to perform basic work activities.

73. DHS has issued at least 15 MA disability hearing decisions 9/1/05 on, in which the record showed that medically-acceptable evidence documented the existence of a condition reasonably expected to cause pain, but the hearing officer discounted pain on grounds it wasn't severe enough to preclude all work, render claimant incapable of performing basic work activity, or rule out all work activity.

137. In at least three decisions issued in 2007, the hearing officer said that the source completing the MA-63 reported limitations fell into the "range" or "category" of sedentary work, without identifying what specific activities were assessed and how long in an 8 hour day the claimant could reportedly perform them.

170. In at least 105 MA disability hearing decisions issued 9/1/05 through 11/30/07:

(a) both the hearing officer and the MART found no impairments severe at Step 2; and
(b) the hearing officer's severity determination was unsupported by, or contrary to, treating and examining medical source opinion of record; and
(c) the hearing officer cited no medical source opinion in support of his/her finding.

171. DHS issued over 20 MA disability hearing decisions 9/1/05 on, in which:



PDF created with pdfFactory trial version www.pdffactory.com

(a) both the hearing officer and the MART found that claimant could do sedentary work, or both found that claimant could do light work; and
(b) the hearing officer cited no medical source opinion in support of his/her RFC determination; and
(c) the "sedentary" or "light" RFC determination was unsupported by, or contrary to, the treating or examining source residual functional capacity assessment(s) of record.

172. There are approximately 60 hearing decisions in which the hearing officer does not identify the MART's rationale, or its most recent rationale.

173. In at least 24 of the favorable MA disability hearing decisions issued 9/1/05 through 11/30/07, new evidence was submitted at or post-hearing.

176. In at least 13 hearing decisions issued 9/1/05 on, both the MART and the hearing officer found that claimant could do sedentary work.

177. In at least 9 hearing decisions issued 9/1/05 on, both the hearing officer and the MART found claimant able to do light work.

178. In at least 2 hearing decisions issued 9/1/05 on, both the hearing officer and the MART determined that impairments were severe at onset, but would not be severe in 12 months.

179. In at least 9 hearing decisions issued 9/1/05, both the hearing officer and the MART determined that impairments didn't meet the duration standard.

180. In at least 1 hearing decision issued 9/1/05 on, both the hearing officer and the MART found that claimant would be able to do sedentary work within 12 months.

181. In at least one hearing decision issued 9/1/05 on, both the hearing officer and the MART found impairments were severe, but did not "preclude all forms of work."

182. In at least one hearing decision issued 9/1/05 on, both the hearing officer and the MART found no evidence of severe impairments expected to last 12 months or more.



PDF created with pdfFactory trial version www.pdffactory.com

183. In at least 1 hearing decision issued 9/1/05 on, both the hearing officer and the MART determined that claimant had medically improved and could do light work.

184. In at least 2 hearing decisions issued 9/1/05 on, both the hearing officer and the MART determined that claimant was medically improved and impairments were no longer severe.

185. In at least 5 hearing decisions issued 9/1/05 on, both the hearing officer and the MART found at Step 2 that the severity and duration standards weren't satisfied.

Based on the foregoing examples, the Defendants submit that it would be an undue burden to require the Defendants to review approximately 400 hearing decisions to find the one, two or twenty-four cases administrative hearing decisions that would permit Defendants to admit or deny the admissions. Wherefore, the Defendants pray that this Court find Defendants' objections sufficient and dismiss Plaintiffs' Motion to Compel.

**4. <u>Miscellaneous Admissions</u>**

Plaintiffs ask this Court to determine the sufficiency of the responses of objections of admissions[5] that do not fall within the prior three (3) categories. See Exhibit D. The Defendants submit that their responses were legally appropriate to the admission as it is written. The specific admissions and responses are set forth below.

67. It is DHS' position that the fact that x-rays or MRI document mild or moderate degenerative arthritis or other mild or moderate musculoskeletal condition, is evidence that:
(a) it is not a severe impairment;
(b) it doesn't result in more than moderate physical limitations;
(c) supports rejection of medical opinion that pain is more than moderate, on grounds it is unsupported by or inconsistent with objective evidence;
(d) supports rejection of reports of severe pain, on grounds they are unsupported by, or inconsistent with, objective evidence.

[5] The admissions at issue in this category are numbers 67, 81, 116, 118, 119, 122, 145, 157 and 158. The specific admissions and responses are set forth at Exhibit D.



PDF created with pdfFactory trial version www.pdffactory.com

*RESPONSE*: The Defendants are unable to admit or deny Paragraph 67 as written as such statements cannot be made in a vacuum or based on the limited information provided in the statement. The Defendants would need to have all other facts and evidence relating to the person applying for Medical Assistance.

81. It is DHS' position that, when assessing pain and symptoms, DHS must determine whether medical signs, laboratory findings, or other objective evidence show:

(a) the existence of a medical impairment which could reasonably be expected to cause pain/symptoms;
(b) the existence of a medical impairment which could reasonably be expected to cause the level of pain/symptoms reported by claimant or a medical source;
(c) the existence of a medical impairment which could reasonably be expected to result in the extent of mental or physical limitations reported by a treating or examining source.

*RESPONSE*: Defendant denies Paragraph 81 as written as the specific facts and evidence of the individual applicant for Medical Assistance is necessary to respond. Without waiving said objection, Defendants admit that it is DHS's position that hearing officers consider "pain" in the context of each applicant's individual case and evidence and evaluate according to 20 C.F.R. §416.929.

116. Since at least 9/1/05, it has been DHS' policy or practice to require not only that the existence of medical impairments be proved to result from abnormalities shown by medically acceptable clinical and laboratory diagnostic techniques, but also that:

(a) the severity of medically-documented impairments be shown by medically acceptable clinical and laboratory diagnostic evidence;
(b) the existence and severity of pain/symptoms be shown by medically acceptable clinical and laboratory diagnostic techniques;
(c) the extent of physical and mental limitations reported by a treating or examining physician be shown by medically acceptable clinical and laboratory diagnostic techniques.

*RESPONSE*: Defendants admit (a) of Paragraph 116.
Defendants deny (b) of Paragraph 116. Defendants admit that symptoms should be evaluated consistent with 20 CFR §416.929. Defendants deny (c) as written.



PDF created with pdfFactory trial version www.pdffactory.com

118. At least through the date plaintiffs served their complaint, it was DHS policy or practice to cease evaluation at Step 2 if the hearing officer found the evidence insufficient to determine severity.

***RESPONSE***: Defendants deny as written. Defendants admit that a hearing officer will stop at Step 2 if the evidence submitted does not establish or demonstrate severity in accordance with state and federal guidelines.

119. Evaluation ceases at Step 2 if the MART or hearing officer finds the evidence insufficient to determine severity.

***RESPONSE***: Defendants deny as written. Defendants admit that a hearing officer will stop at Step 2 if the evidence submitted does mot establish or demonstrate severity in accordance with state and federal guidelines.

122. Attached as Admission Docs. H are true and correct copies of the treating psychiatrist Greer's MA-63 form and some of the other records in Plaintiff Smith's hearing record.

***RESPONSE***: Defendants admit that Doc H. contains a copy of the treating psychiatrist Greer's MA-63. Defendants deny as to the remaining records.

145. DHS hearing officers interpret the requirement that claimants follow recommended treatment as justifying a finding that duration can't be determined unless and until claimant has undergone all forms of recommended treatment, because treatment might restore ability to work prior to the expiration of 12 months.

RESPONSE**:** Objection, as the information sought is overly broad and not likely to lead to the discovery of admissible evidence at trial and as this type of information is not maintained aside from reviewing all MA disability decisions. Defendants deny Paragraph 145 as it pertains to the named Plaintiffs.

157. Para. 2(c) of Admission Doc. W establishes a mechanism to promote administrative efficiency by averting the need for hearing officer review and issuance of decisions in those cases where the MART is willing to revise its determination and find claimant disabled.

***RESPONSE*****:** At the time of answering, Defendants have made a reasonable inquiry and based on the information readily obtainable are unable to admit or deny as are attempting to obtain a copy of the above consent order from the Rhode Island Superior Court.



PDF created with pdfFactory trial version www.pdffactory.com

158. DHS interprets para. 2(c) of Admission Doc. W not only to authorize the MART to tell the hearing officer when it has changed its prior determination and finds claimant disabled, but also to:

(a) authorize post-hearing MART review of hearing testimony, as well as review of new medical records;
(b) authorize submission into the record of post-hearing MART written findings and commentary on hearing testimony and new evidence;
(c) provide the MART the opportunity to revise its rationale for finding claimant not disabled;
(d) provide the hearing officer with an updated MART assessment of the evidence;
(e) provide a mechanism to inform the hearing officer of the MART's new reason(s) for finding claimant not disabled, if the MART revised its prior rationale.

*RESPONSE*: At the time of answering, Defendants have made a reasonable inquiry and based on the information readily obtainable are unable to admit or deny as they are attempting to obtain a copy of the above consent order from the Rhode Island Superior Court. Without waiving said objection Defendants deny paragraph 158 to the extent that the consent order is the sole authorization for post hearing MART review.

For the foregoing reasons, the Defendants pray that this Court deny Plaintiffs' Motion to Compel.

## C. REQUEST FOR PRODUCTION OF DOCUMENTS

Plaintiffs have asked this Court for an Order compelling Defendants to produce documents in response to Request for Production of Documents 3, 4, 6 and 7.

Plaintiffs filed the instant Motion asking this Court to compel Defendants to comply with requests for production of documents 3 and 4. These requests state:

3. All documents related to the determination of MA disability at the MART and/or agency hearing levels

***RESPONSE:*** Objection, this request is overly broad and unduly burdensome and not like to lead to the discovery of admissible evidence at trial. This request fails to set forth a specific time frame and could include every piece of document contained in individuals claimant's applications for Medical Assistance and any administrative hearing file. Without



PDF created with pdfFactory trial version www.pdffactory.com

waiving said objection, copies of the applicable DHS forms are produced herewith in Exhibits A through H. Defendants further state that the following materials are related to the determination of MA disability at the MART and/or agency hearing levels and are found on-line:

i. Disability Evaluations under Social Security (Blue Book;
ii. U.S. Department of Labor – Dictionary of Occupational titles;
iii. U.S. Code of Federal Regulations; and
iv. Social Security Administration – Programs Operational Manual System (POMS).

Additionally, the Defendants possess copies of the Rhode Island disability Determination Services Training materials, which include approximately two binders and approximately six training tapes. Defendants will make copies of those materials available at DHS' offices during business hours for Plaintiffs' counsel's review.

4. All documents related to the standard of review at MA disability hearings; weight due MART findings, opinions, or determinations; the role of the MART at agency hearing level; and/or post-hearing review by the MART.

***RESPONSE:*** Objection, this request is overly broad and unduly burdensome and not likely to lead to the discovery of admissible evidence at trial. This request fails to set forth a specific time frame and could include every piece of document contains in individuals claimant's applications for Medical Assistance and any administrative hearing file and decision. Without waiving said objection, Defendants state that the standard of Review utilized by the DHS hearing officers is governed primarily by federal (social security) regulations. The Defendants further state that the standard of Review utilized by the DHS Hearing Officers is also governed by Rhode Island Superior Court decision that interpret applicable state and federal law.

In their motion, Plaintiffs claim that the Defendants' objections to requests 3 and 4 lacked merit, that the request is not overly broad. *See* Document 23 at p. 74. Plaintiffs assert that even though the request contained no date, that they seek documents in effect 9/1/05 or later. Now only in their motion do Plaintiffs indicate that they do not seek individual hearing decisions or evidence in an individual's filed. ***Id***. Although Plaintiffs state these numerous qualifiers; that is not what Requests 3 and 4 plainly state. Defendants submit that their objections to Requests 3 and 4 are appropriate.



PDF created with pdfFactory trial version www.pdffactory.com

Plaintiffs have moved to compel request number 6 which provides:

> 6. Any and all documents indicating the number of cases in 2007 in which, after having found an MA applicant not disabled, DHS subsequently found the applicant disabled for purposed of MA as a direct consequence of applicant's being found disabled by Social Security.
>
> ***RESPONSE:*** Objection, this request is overly broad and unduly burdensome, not likely to lead to the discovery of admissible evidence at trial and seeks documents protected by the work produce and attorney client privilege. Solely for purposes of identicattion: email and spreadsheet from Dianne Kayala to Attorney Deborah Buffi, Attorney Jaqueline Kelley, Frank Spinelli and Julie Hopkins.

Upon review, legal counsel made an error and the document identified for purposes of an asserted privilege is in fact, not responsive to the request. Defendants will file an amended response to request 6.

The Plaintiffs have asked this Court to compel Defendants to comply with request 7 which asks for:

> All documents provided to or from the federal Centers for Medicare and Medicaid Services related to determination of disability for MA at the initial determination level and/or agency hearing level, including documents related to the standard of review and/or role MART at agency hearing level.

Defendants submit that the objection they inserted was legally appropriate. The request fails to set forth any time frame and on its face is overly broad. Moreover, the request essentially asks for any piece of paper from the federal CMS that in any way "relates" to the stated topic.

Defendants submit that the respective objections to Request for Production of Documents 3,4,6 and 7 are legally appropriate and pray that this Court deny Plaintiffs' motion to compel.



PDF created with pdfFactory trial version www.pdffactory.com

Respectfully submitted,

DEFENDANTS
By their Attorney,

PATRICK C. LYNCH
ATTORNEY GENERAL

/s/ Brenda D. Baum
BRENDA D. BAUM (#5184)
Assistant Attorney General
RI Department of Attorney General
150 South Main Street
Providence, RI 02903-2907
Tel: (401) 274-4400 x 2294
Fax: (401) 222-3016
bbaum@riag.ri.gov

**CERTIFICATION**

I hereby certify that on this 12th day of June 2008 a true copy of the within Memorandum was sent by electronic mail to:

**Sarah Somers, Esq.**
Somers@healthlaw.org

**Attorney Gretchen M. Bath**
gbath@rils.org

/s/ Brenda D. Baum



PDF created with pdfFactory trial version www.pdffactory.com